THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GASPARE
GARAFOLO, Appellant.

Second Department, March 25, 1974.

*Gerald L. Shargel* (*James M. La Rossa* of counsel), for appellant.

*Michael Armstrong, District Attorney* (*Cornelius O'Brien* of counsel), for respondent.

*Per Curiam.* Following the denial of a motion to suppress evidence allegedly obtained as the result of an unlawful search and seizure, the defendant pleaded guilty to possession of a quantity of untaxed cigarettes as a felony and to possession of a weapon as a misdemeanor. He received a six-month jail sentence on the felony and was fined $1,000 on the gun charge. The appeal is from the judgment of conviction.

Two questions are brought up for review by this appeal: (1) whether there was sufficient credible evidence to establish reasonable cause for the defendant's initial arrest and (2) whether the subsequent search of his garage violated his Fourth Amendment rights.

The testimony at the suppression hearing disclosed that one Paul Murphy, an investigator for the State Special Investigation Bureau, had received some prior hearsay information about the defendant. On June 13, 1972 he had the defendant's house under observation. He saw him emerge at 3:30 P.M. and drive away. Murphy followed him and saw him stop at a private garage, open the door with a key and back into it. The defendant opened the trunk of his car and Murphy observed 100 to 200 cartons of cigarettes in the rear of the garage, in addition to a number of closed cardboard cartons. At that time it is undisputed that he did not know whether these cigarettes were untaxed. The defendant emerged from the garage carrying a brown paper bag *under* his arm, closed the door and went to a nearby house. When there was no response to his knock he started to return to the garage. On the way he encountered Murphy who, claiming that he could see into the brown paper bag which the defendant had obligingly left open at the top, discerned that one of the cartons had a loose flap and that a cigarette pack *inside the carton* had a North Carolina decal on the *bottom* of it. He thereupon placed the defendant under arrest. He took the defendant back to the garage and someone opened the overhead solid metal door. He was unsure as to who actually did so. He claimed that as he edged past the garaged car he saw a revolver butt protruding from a bag under the driver's seat and promptly retrieved it. The search of the garage

revealed 1,435 cartons of untaxed cigarettes (i.e., they had no New York State tax stamp affixed). Two hundred of these cartons were found in the trunk of the car.

It was conceded that the defendant, who cannot speak English, did not consent to the search of his garage.

The defendant told a different story of the events preceding the arrest. He testified, through an interpreter, that the bag was crumpled and closed at the top, that it was grabbed from his hands by Murphy as he, the defendant, was ringing the doorbell and that the keys for the garage were taken from him and the garage door opened by Murphy.

We need not waste much time on the defendant's further explanation of how he allegedly innocently came into possession of the untaxed cigarettes. That tale was almost as tall as Murphy's, but that is not the issue. The issue here is not whether the defendant is guilty, but whether he was the victim of an unlawful arrest followed by an unlawful search and seizure.

The validity of an arrest depends upon existence of probable cause at the time of the arrest and cannot be based on evidence obtained as the result of an ensuing search (*People* v. *McCarthy,* 14 N Y 2d 206; *People* v. *Loria,* 10 N Y 2d 368).

It is well settled, of course, that issues of credibility are primarily for the trial court and its determination is entitled to great weight (*People* v. *Atlas,* 183 App. Div. 595, 600, affd. 230 N. Y. 629). However, reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interests of justice necessitate their nullification (5A C. J. S., Appeal and Error, § 1656[3]). We refuse to credit testimony which has all appearances of having been patently tailored to nullify constitutional objections. In evaluating testimony we should not discard common sense and common knowledge. This concept is well stated in section 649 of 22 New York Jurisprudence, Evidence, as follows: "The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case." (See, also, to the same effect, *People* v. *Galbo,* 218 N. Y. 283; Ann. 2 A. L. R. 1227; 32A C. J. S., Evidence, § 1031[3].) Obviously, Murphy could not have observed from the public sidewalk the lack of a tax stamp on individual packs of cigarettes contained in cartons and encased in unopened boxes in the back of an unlighted garage. It is only slightly

less unbelievable that he made a similar observation through a convenient tear in a carton in an open bag as he passed the defendant on the street some two to four feet from him. The bag, incidentally, was a large one, of the supermarket kind, 24 inches tall by 12 inches wide, and contained only four or five cartons of cigarettes lying *horizontally* in the bag, so stamps on individual packs would scarcely have been observable. To meet this obvious difficulty, Murphy had the defendant carrying the bag itself in a horizontal position under his arm, with an open mouth facing Murphy. In a normal posture, the defendant's arm would have crushed the bag between the open mouth and the cigarette cartons in the bottom, so the cartons themselves would not have been observable, let alone their contents.

Similar incredulity attaches to the alleged observation of the gun under the driver's seat of the car. Again, it is found under the driver's seat, with the butt protruding from an open-ended bag on the floor of a darkened car. There is nothing in the record to show that either the car or the garage was artificially lighted at the time. However, this case does not reach that point, since, as the arrest was illegal, everything which transpired thereafter, to wit, the entry into the garage and the finding of the articles therein, violated the defendant's constitutional rights and must be suppressed (*Beck* v. *Ohio,* 379 U. S. 89). This is not a case of seizing contraband in open view, as in *People* v. *Swanberg* (22 A D 2d 902, mod. on other grounds 16 N Y 2d 649). Here, a search was necessary before it could be determined that these cigarettes were unstamped and untaxed.

It may well be that agent Murphy had information from a reliable source which, coupled with what he believably saw, would justify the arrest. There is an intimation in the record that he did, but no attempt was made to prove it. The People instead have elected to rely on the above-outlined story. However, if such evidence exists the People should have an opportunity to adduce it (*People* v. *Malinsky,* 15 N Y 2d 86).

Under the circumstances, the case should be remanded to the Criminal Term for a further hearing and a report to this court on the issue of whether or not the initial arrest was lawful and determination of the appeal should be held in abeyance in the interim.

LATHAM and BENJAMIN, JJ. (dissenting). Acting upon information from a confidential informant, relayed by an agent for the Department of Taxation and Finance, that the defendant was selling untaxed cigarettes, Paul Murphy of the Special Investigations Bureau, in plainclothes, followed the defendant

to a single-car garage and observed him unlock the door and enter. The defendant omitted to shut the door and Murphy was able to see cartons of cigarettes lining the garage (subsequently counted at over 1,400 cartons). The defendant emerged carrying a brown paper bag and locked the door. He walked to a nearby house, failed to obtain an answer and proceeded to return to the garage. Murphy and the defendant met. At that point, the two were three to four feet apart. The brown paper bag the defendant was carrying was open and, as Murphy demonstrated to the trial court, the bag was being held so that he could see inside. Packages of cigarettes were unprotected by any carton covering and Murphy saw only the distinctive North Carolina decal, with which he was familiar, indicating the defendant's failure to comply with the tax laws of this State. The defendant was then placed under arrest.

In our opinion, Murphy's testimony could well be credited by the trier of the facts and warrants the conclusion that there was probable cause to arrest the defendant for the illegal sale of cigarettes. Murphy's subsequent entry into the garage was not to search for contraband but to seize that which had already been seen. Law enforcement officials are not required to shut their eyes to readily visible evidence of crime and nothing in the Constitution inhibits the seizure of such evidence (*People* v. *Swanberg*, 22 A D 2d 902, mod. on other grounds 16 N Y 2d 649; *People* v. *Manzi*, 38 Misc 2d 114). The conclusion that the cigarettes in the garage were contraband went beyond mere speculation and was based on reasonable grounds. Murphy had observed an inordinate number of cigarette cartons in the garage and the cigarettes in the brown paper bag which the defendant brought out of the garage were untaxed. Upon Murphy's lawful entry into the garage, the firearm, which had not been adequately concealed, was observed and seized.

Accordingly, we would affirm the judgment.

GULOTTA, P. J., SHAPIRO and CHRIST, JJ., concur in *Per Curiam* opinion; LATHAM and BENJAMIN, JJ., dissent and vote to affirm, with an opinion.

Case remanded to the Criminal Term for a further hearing and a report to this court on the issue of whether or not the initial arrest was lawful and determination of appeal held in abeyance in the interim.