■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAPHAEL OTERO, Appellant.—Judgment, Supreme Court, Bronx County, rendered on August 4, 1975, convicting defendant, after trial, of the crime of possession of a weapon in the third degree (Penal Law, § 265.02, subd [4]), reversed, on the law and on the facts, and indictment dismissed. The testimony of the arresting officers discloses that, at about 11 o'clock at night, while riding in a taxicab used by the police for anticrime patrol, they observed the defendant carrying packages in front of an unlit grocery store. That store, which was owned by the defendant's son, was operated by the defendant. Officer Smith testified that he noticed a bulge under the right side of the defendant's tight-fitting sweater. All this took place while they were about 50 feet from defendant. Solely because they observed the bulge, the officers moved the taxicab towards the defendant, left the taxicab and walked up to him. The relative positions of the defendant and the police officers is described by the following questions and answers appearing in the trial minutes: "Q. When you first saw the bulge you were not able to ascertain that it was a gun? A. No. Q. How far away were you when you first ascertained that it was a gun? A. About twelve inches away. I didn't physically touch the man until I was sure it was a weapon. My partner questioned the man if he had a gun. He didn't say anything. My partner asked him if he had a permit for

a gun and he didn't—Q. And you were there during all this period of time? A. I was standing on the right. Q. He couldn't get a way *[sic]* from either one of you, could he? * * * Q. You were both standing there with this man that you thought had a gun which you later learned was a gun and you were fifty feet away when you saw it and you blocked him, didn't you? * * * A. He couldn't walk by us. * * * THE COURT: Did you obstruct him before or after you ascertained it was a gun? * * * THE WITNESS: I guess it would have to be before." Later we find the following: "THE COURT: Suppose he just tried to leave could he have done so at that moment, if he decided not to talk to you and wanted to walk away? THE WITNESS: I probably would have approached him and stopped him again." The record discloses further that the police officers identified themselves, as such, when they arrived within 15 or 20 feet of the defendant, at which time they exhibited their shields. It is clear from this record that the defendant was stopped by the police from continuing whatever he was doing as a result of their purported observation of a bulge on his right side around his waist, which observation was made late at night from about 50 feet away. The question presented is whether the acts which the police allegedly observed are sufficient to bring into play CPL 140.50, which provides for the stopping of a person who has committed or is about to commit a felony or a Class A misdemeanor. "Before a person may be stopped in a public place a police officer must have reasonable suspicion that such person is committing, has committed, or is about to commit a crime" *(People v Cantor,* 36 NY2d 106, 112). On this record we are convinced that the arresting officers did not possess sufficient grounds to reasonably suspect that this defendant was committing or was about to commit a crime. They acted on bald suspicion. We do not find credible the officers' testimony that they, while in a taxicab 50 feet away, at 11:00 P.M., were able to see a bulge in the waist of the defendant. Of course, we are familiar with the rule that issues of credibility are usually and primarily for the trial court. However, we are of the opinion that the testimony of these officers "has all appearances of having been patently tailored to nullify constitutional objections. In evaluating testimony we should not discard common sense and common knowledge." *(People v Garafolo,* 44 AD2d 86, 88.) We have noted the dissent of our colleague in which he makes reference to the fact that the defendant was seen at "11:00 P.M. carrying packages from a darkened store (bodega) to an automobile, in a high crime area in the Bronx". If this had been the reason given by the officers for their actions, a different situation would be presented. The fact is that nowhere in the record have the officers made reference to what the dissent has alluded to. Rather, it appears that the facts relied upon by our dissenting colleague played no part in the course of action followed by these police officers. They both testified, with clarity, that they approached defendant because of the bulge which they allegedly saw from so far away. No claim is made by the officers that a burglary, or any crime, was in process, as might be inferred from the facts set forth in the dissent. "The fact that the police * * * actually found a gun in defendant's possession is neither decisive nor material to the constitutional point in issue." *(People v Rivera,* 14 NY2d 441, 447.) Concur—Stevens, P. J., Murphy, Birns and Capozzoli, JJ.; Nunez, J., dissents in the following memorandum: I would affirm. The defendant was seen by two police officers at 11:00 P.M. carrying packages from a darkened store (bodega) to an automobile, in a high crime area in the Bronx. Seeing a bulge under a tight-fitting sweater worn by the defendant, they approached him to investigate. At a distance of about one foot from the defendant, one of the officers saw the clear outline of the stock of a gun

showing above defendant's belt under his sweater. Under these circumstances the police had reasonable suspicion to intercept, and arrest the defendant. *(People v Rivera,* 14 NY2d 441.)