■ The People of the State of New York, Respondent, v Norman Bezares, Appellant. — Judgment of Supreme Court, Bronx County, entered on March 31, 1982 (William Holland, J., at plea and sentence; Ivan Warner, J., at suppression hearing), convicting defendant, upon his plea, of criminal possession of a weapon in the third degree, is reversed, on the law and on the facts, the motion to suppress granted and the indictment dismissed. ¶ We conclude on this record that the finding by the hearing court, that the police conduct in this street encounter that resulted in the arrest of the defendant and his later conviction by plea of criminal possession of a weapon in the third degree was reasonable and that suppression should be denied, is contrary to the weight of the credible evidence. We recognize and acknowledge the rule that issues of credibility are primarily for the trial or hearing court, whose determination is entitled to great weight, but we also recognize and acknowledge that "reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interests of justice necessitate their nullification [citations omitted]" (*People v Garafolo,* 44 AD2d 86, 88). ¶ Here, the testimony of the arresting detective was, at a minimum, not supported by the testimony of his fellow police officer who was with him throughout, and indeed to some extent, was contradicted by that testimony. The sole witness called by the People was Detective Vassilatos, who testified that while on patrol in an unmarked car and in plain clothes, they received a radio run which reported that there were four male Hispanics with guns in front of 950 Hoe Avenue. Vassilatos testified that the description he heard was of one male wearing a red and white shirt and another male wearing a blue shirt. He said the radio run was "being said fast" and that there was a "lot of excitement over the radio". He testified that as his car entered the block of 950 Hoe Avenue, he saw four male Hispanics in front of 950 and that two of them "fled" when they saw his car. At least one radio motor patrol car also responded to the radio run. As Vassilatos pulled in front of 950 Hoe Avenue, the other two male Hispanics, one of whom was wearing a blue shirt, started to walk away. The officer testified that he stepped out of the car, showed his shield and ordered the male Hispanic in the blue shirt, the defendant, to turn around with his hands up. He frisked him, "felt what appeared to be a revolver" and pulled a gun from under the defendant's shirt. Although the officer testified that he "feared for his safety", he did not draw his gun but assumed that his partner "usually would back [him] up if [he was] searching somebody." However he was not certain this his partner had drawn his gun. ¶ Detective Vassilatos' partner, Officer Kalin, was called as a witness by the defendant. He testified that he did not, at any time, see four male Hispanics as their car pulled into Hoe Avenue. He saw two men walking toward the car, some three to four feet apart. He could not tell if they were together. He said that "one had a blue shirt on and dungarees which was part of the description that came over the air from Central". Officer Kalin remembered that the radio run was "something from Central about a red shirt, a white shirt and four male Hispanics". He also recalled that part of the description that was received from Central was of a man with a blue shirt. The Sprint report of the radio run was received in evidence. The portion dealing with the description read in part "[c]omplaint says [f]our males, Hispanics, one of them is wearing a red, white and blue shirt and jeans. No further description of others." ¶ Neither officer testified to

seeing any "bulge" on defendant's person or any other suspicious conduct and Detective Vassilatos' testimony of having seen two men "flee" as his car neared 950 Hoe Avenue was not supported by his partner, Officer Kalin. Indeed, the testimony of both Officer Kalin and Ralph Hernandez, a second witness called by the defendant, fairly well established that there were only two male Hispanics in that immediate vicinity when the police arrived. ¶ The Court of Appeals has repeatedly indicated that "the proper analysis in cases of this nature is to examine the predicate for the police action and then determine whether or not that predicate justified the extent of the official intrusion on the individual. Thus, the predicate established defines the scope of permissible police conduct." (*People v Stewart,* 41 NY2d 65, 66.) It is clear, moreover, that the justification for police intervention must rest upon constitutionally cognizable factors (*People v De Bour, People v La Pene,* 40 NY2d 210), and "[w]hile a telephone call from an anonymous source furnishing a general description and location of a 'man with a gun' will justify a belief that criminal activity is afoot (*People v Cantor,* 36 NY2d 106; *People v De Bour* [40 NY2d 210]), it does not, by itself, constitute reasonable suspicion to stop and frisk anyone who happens to fit that description (*People v La Pene,* 40 NY2d 210; CPL 140.50). Such a predicate triggers only the police officer's common-law right to detain to the extent necessary to obtain explanatory information." (*People v Bruce,* 78 AD2d 169, 172.) Here, the testimony falls far short of establishing that the police had barely a "general description" sufficient to warrant any belief that the defendant was engaged in any criminal activity. Even assuming that there was justification for believing that the radioed description of the "four male Hispanics with guns" indicated that one was wearing a "red and white shirt and one wearing a blue shirt and jeans" rather than the apparently accurate description as reflected in the Sprint report of "one wearing a red, white and blue shirt and jeans", such a bare description, without more, would not justify the highly intrusive conduct of the police in this case. "Before an officer 'places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous.' (*Sibron v New York,* 392 US 40, 64; *People v Stewart,* 41 NY2d 65, 69 * * *)". (*People v Bruce, supra,* p 172.) This record fails to reveal any credible evidence that the arresting officer possessed any "particular facts from which he reasonably inferred that the [defendant] was armed and dangerous." Thus, the hearing court's contrary finding is unsupported by the evidence and cannot stand. Concur — Carro and Alexander, JJ. Sandler, J., concurs with the majority writing in a separate memorandum and Ross and Silverman, JJ., dissent in a memorandum by Silverman, J., as follows:

Sandler, J. (concurring). If the facts were as testified to by the arresting officer, I believe that an adequate legal basis would have been presented both for a detentive stop and a frisk of the defendant. Regrettably I am persuaded that the testimony of the arresting officer has every appearance of having been carefully tailored to meet constitutional objections to the action that he took. ¶ The radio run described one of the four Hispanics as wearing a red, white and blue shirt and reported no further description of the others. The defendant wore a blue shirt. I am unable to accept the arresting officer's testimony that he misheard the radio report and understood that it described the attire of two persons, one with a red and white shirt and the other with a blue shirt, a mishearing all too convenient for the purpose of justifying the action that was taken. ¶ In addition, the arresting officer testified that, consistent with the radio run, he observed four Hispanics at the described location, two of whom fled. His brother officer saw only two Hispanics at the described location, both

of whom, several feet apart, were walking in the direction of the police vehicle. In the absence of any physical circumstance that would explain why the brother officer, presumably also alert to the presence at the location of "four male Hispanics with guns", failed to observe two fleeing Hispanics, I am unable to accept the testimony of the arresting officer as reliable. ¶ Accordingly, I agree that the judgment of the Supreme Court, Bronx County, rendered March 31, 1982, convicting defendant, upon his plea, of criminal possession of a weapon in the third degree, should be reversed, on the law and on the facts, the motion to suppress should be granted, and the indictment should be dismissed.

Silverman, J. (dissenting). Ross and Silverman, JJ., dissent and would affirm for the reasons stated by Warner, J., on the suppression hearing. (See, also, *People v McLaurin,* 43 NY2d 902, revg on dissenting opn of Nunez, J., 56 AD2d 80, 84-85.)