■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JESUS WOODS, Appellant. — Judgment, Supreme Court, Bronx County (Alvin Schlesinger, J.), rendered on November 18, 1983,

affirmed for the reasons stated by Alvin Schlesinger, J., at the suppression hearing. Concur — Kupferman, J. P., Sullivan, Ross and Bloom, JJ.

Alexander, J., dissents in a memorandum as follows: In my view this case presents a classic example of a "pretext stop" by police officers which they attempt to legitimize by testimony which is patently tailored to nullify constitutional objections. Accordingly, defendant's conviction by plea of criminal possession of a controlled substance in the second degree (Penal Law, § 220.18) should be reversed, the motion to suppress granted and the indictment dismissed.

"Reasonableness is the touchstone by which police conduct is measured under the Fourth Amendment. [Citations omitted.] 'Whether * * * a particular search or seizure is to be considered reasonable requires weighing the government's interest in the detection and apprehension of criminals against the encroachment involved with respect to an individual's right to privacy and personal security'. (*People v Cantor*, 36 NY2d 106, 111; *Terry v Ohio*, 392 US 1.) In weighing these interests, 'we must consider first whether * * * the police action was justified in its inception and secondly whether * * * that action was reasonably related in scope to the circumstances which rendered its initiation permissible.' (*People v De Bour*, 40 NY2d 210, 215.)" (*People v Williams*, 79 AD2d 147, 148-149.)

The Court of Appeals in the *"Prochilo* trilogy" has observed that "whether the action of the police officer was reasonable [in a citizen street encounter] — 'must necessarily turn on the facts of each individual case'. (*People v Green*, 35 NY2d 193, 195)". (*People v Prochilo*, 41 NY2d 759, 761.) The court suggested (pp 761-762) that among the many aspects of an individual case that must be considered in making a determination as to the reasonableness of police conduct is: "[w]as there evidence of probative worth that there had been a pretext stop and frisk or that the police were otherwise motivated by improper or irrelevant purpose?" Pretext is defined as an "[o]stensible reason or motive assigned or assumed as a color or cover for the real reason or motive; false appearance, pretense" (Black's Law Dictionary [4th ed], p 1351). Even an otherwise legitimate or lawful stop may be deemed unreasonable if made in bad faith or as a cover for some other "real reason". (See *People v Manning*, 51 AD2d 933.) *Prochilo* (*supra*, p 761) also teaches that in determining the reasonableness and appropriateness of police conduct in a street encounter a proper inquiry is whether there was "proof of a describable object or of describable conduct that provides a reasonable basis for the police officer's belief that the defendant [was engaged in criminal activity]".

In making such a determination, testimony should not be credited where it "has all appearances of having been patently tailored to nullify constitutional objections." (*People v Garafolo,* 44 AD2d 86, 88; *People v Manning,* 51 AD2d 933, *supra.*) " 'The rule is that testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case.' " (*People v Garafolo, supra,* p 88, citing 22 NY Jur, Evidence, § 649).

Applying these principles in evaluating the reasonableness of Officer Flaherty's conduct in the circumstances presented by this case, the conclusion is inescapable that such conduct was unreasonable, and therefore, violative of defendant's Fourth Amendment right to be free from an illegal search and seizure.

Flaherty testified that he and his partner were in plain clothes, on anticrime patrol. Their vehicle was an unmarked van and Flaherty was the passenger. They were proceeding southbound on Pugsley Avenue in The Bronx, at about 15 miles per hour, when Flaherty observed a 1983 silver Volvo proceeding northbound at about the same rate of speed. Defendant was driving the Volvo. Flaherty was aware that it was a rather expensive automobile and that this was a drug-prone area. He says he observed that the registration sticker had expired. His partner, Officer Young, who was driving the van, made a U-turn and then followed the Volvo for some three blocks when it finally stopped. Officer Young pulled the van in front of the stopped Volvo, in a manner that would prevent it from pulling off without having to maneuver back and forth. Flaherty's testimony was that he was concerned, initially, as to the ownership of the Volvo and employed this unusual procedure to stop the defendant so as to ascertain ownership of the vehicle. He offered no explanation for not having stopped the car immediately or for not having made a plate check over the radio, with which the van was equipped, rather than following the car for three blocks.

Flaherty also testified that he had not recognized the defendant or the vehicle prior to pulling in front of the Volvo to block its path after it had stopped, and this despite the fact that this officer had stopped this defendant in this same car less than six months earlier and had arrested him for possession of a handgun. Such a significant event, taken together with Flaherty's testimony that his attention was first attracted to this car because this "expensive silver Volvo" was "out of place" in a

drug-prone area, leads to the inescapable conclusion that Flaherty did in fact recognize the defendant and the car prior to the stop and that the decision to stop defendant was made because of this recognition and not because of the expired registration. Moreover, Flaherty had learned from his previous encounter with the defendant that the Volvo belonged to defendant's brother. Thus, there was no reason for him to be concerned about the ownership of the car or to wonder whether or not it was stolen. Thus the conclusion is compelled that the officer's claim that he stopped the vehicle to check on whether it was stolen was a mere "pretext" to disguise the true reason for the stop, to conduct a search of the defendant in the hope of uncovering contraband. (*People v Manning, supra; People v Prochilo, supra.*) The initial stop was unlawful. That fact, standing alone, is sufficient to warrant reversing the conviction, granting the motion to suppress and dismissing the indictment.

Officer Flaherty's ensuing illegal search of the defendant and the seizure of the contraband also require reversal. His version of the facts and circumstances leading to the search and the seizure of the controlled substance also appears to be patently tailored to nullify constitutional objections. He testified that because during the prior encounter the defendant had made a move as if to draw a gun, Flaherty and his fellow officer approached the defendant with guns drawn after he had recognized that the defendant was the same person whom he had previously arrested. Thus, he feared for his safety. Flaherty testified that after he asked the defendant for his license and registration, the defendant exited the vehicle. He claimed that the defendant reached to his left breast pocket in a motion which Flaherty described as a "furtive motion", which prompted Flaherty to put his hand on the defendant's chest at the point where the defendant reached. Flaherty said he felt a hard object which he thought to be the butt of a gun. He reached into the inside pocket of defendant's jacket and removed a package he believed contained heroin, which was wrapped in black electrical tape, and two bags containing a white powder. He then arrested the defendant and frisked him but failed to uncover any other contraband.

Not only does Officer Flaherty's testimony appear to contain all of the pat phrases generally used to establish those elements necessary to overcome Fourth Amendment objections, e.g., "that the officer feared for his safety"; "that the defendant made a furtive movement"; "that he felt a hard object in defendant's pocket which he believe to be the butt of a gun"; and "that the object he removed looked like a gun butt", which patently

tailored testimony may generally be disregarded even though uncontradicted (*People v Garafolo, supra*); here that testimony is flatly contradicted by the testimony of other witnesses. Defendant called four witnesses, including Police Officer Frank, a member of a second anticrime unit that was on the scene. All four of these witnesses testified that the defendant was searched immediately as he exited the car. Three of the witnesses, defendant's girlfriend, her friend and her friend's mother observed the incident from the second-floor window of an apartment in the building in front of which defendant's car was double-parked. Each testified as to the immediate search and while it may be expected that their testimony would be supportive of defendant, as indicated, the fourth defense witness, Officer Frank, was a member of another anticrime unit which was at the scene of the incident. Officer Frank's vehicle was parked behind the defendant's car. Officer Frank exited his car and observed the entire transaction from close by. He testified in response to the court's questions that after defendant got out of his car, Officer Flaherty immediately spun him around. Officer Frank said that at that point, with the defendant's hands on top of the car Flaherty "patted the guy down in classical police fashion and removed the contraband". Moreover, Officer Frank testified that he was surprised at the way the officers were acting during the incident. He too had observed the expired registration and would have considered the incident to only have been a "casual examination".

Although issues of credibility are primarily for the trial or hearing court, whose determination is entitled to great weight "reversal is warranted where the fact findings of the trial court are manifestly erroneous or so plainly unjustified by the evidence that the interests of justice necessitate their nullification [citation omitted]" (*People v Garafolo, supra,* at p 88). Moreover, reversal is warranted here not only because the testimony is patently tailored to nullify constitutional objections, it is flatly contradicted by other credible testimony.