■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG ADDISON, Appellant.—Judgment, Supreme Court, Bronx County (George D. Covington, J.), rendered December 12, 1983, convicting defendant, upon his plea of guilty of criminal possession of a weapon in the third degree, and sentencing him to 60 days' imprisonment and 4 years and 10 months of probation, reversed, on the law and on the facts, the motion to suppress granted, the judgment vacated and the indictment dismissed.

The only issue on appeal is the legality of the seizure of the gun, for the possession of which defendant has been convicted. At the suppression hearing the arresting officer testified that he and his partner responded to a radio run of a "man with a shotgun, possible shots fired" at 919 East 179th Street. A second call described the suspect as a black male, 6 feet to 6 feet 1 inch tall, wearing a red and white coat and black bomber type hat with flaps. When the officers arrived at the Lampert Houses on 179th Street from where the 911 call came, they spoke with a number of persons, including a security guard, who told them that a handgun had been displayed by a black male, 6 feet to 6 feet 1 inch tall, wearing a white coat and black bomber hat with flaps that went over the head. The witnesses told the arresting officer that no shots had been fired and that the man had run toward 180th Street and Boston Road. The officers proceeded on foot to 180th Street and, as he exited the apartment building at 1048 East 180th Street, they observed defendant, who, the arresting

officer claimed, matched the description of the gun-wielder, although he was wearing a coat extending to the knees or midthigh and a brown fur hat with tied-up flaps. The arresting officer testified that as he approached defendant the two made eye contact and that defendant moved his hand toward his waistband. On observing this move, the officer testified, "I had reasonable cause to believe that he had a gun on him." Drawing his own gun, the officer grabbed defendant, reached into his waistband and recovered a loaded .32 caliber pistol.

The arresting officer had made no notation, either in his memo book or any police report, of any conversation with civilians or of having received a description from them. In fact, on both the UF 61 and arrest worksheet he had noted only that in response to a radio run he had proceeded to the location and found defendant. In his Grand Jury appearance, four days after the incident, the arresting officer had testified: "At the time I received a radio run, man with a gun at 180th Street and Boston Road. Upon arriving at the scene we got the description of a male, black, six foot, six foot one, wearing a winter coat, a bomber type coat, a winter overcoat, bomber type. We got to the scene. We spotted one suspect in front of 1048 East 180th Street. We approached him and noticed a bulge in the right side of his waistband. I believed it to be possibly a gun. We patted him down and recovered one hand gun."

The suppression court denied the motion to suppress, fully crediting the arresting officer's testimony and finding that defendant, who matched the description of the perpetrator, had reached for his waistband as the officer approached. We reverse, grant the motion, vacate the conviction and dismiss the indictment.

While we recognize that issues of credibility are for the trier of fact, whose factual findings should not lightly be disturbed, we are of the view that the arresting officer's testimony was tailored to meet constitutional objections *(see, People v Garafolo,* 44 AD2d 86, 88) and should not be credited. Were the inconsistency between the arresting officer's in-court and Grand Jury testimony, of which the suppression court failed to take note, the only major discrepancy in his evidence, the People's argument that the officer simply neglected to mention defendant's furtive movement in his Grand Jury testimony might merit consideration. But other significant inconsistencies in the arresting officer's account cast doubt on his veracity.

It is clear from the suppression court's findings that defen-

dant was not wearing a red and white jacket as described; nor was he wearing a black bomber hat, but rather a brown fur hat with tied-up ear flaps. Aside from defendant's height, the only information that corresponded to the actual state of affairs, viz., an unfired gun instead of a fired shotgun and the 180th Street rather than 179th Street location, purportedly came from "people on the street" and a security guard. Curiously, none of these witnesses could be otherwise identified. Nor was their role in the matter noted in any memo book entry, arrest record or other report of the incident. Furthermore, the testimony of the arresting officer's partner, who was present throughout, was limited to the postarrest aspects of the incident and carefully avoided any mention of the circumstances leading to defendant's arrest.

Finally, in light of the arresting officer's concession that five other police cars had responded to the scene and that some of the responding officers participated in the frisk, in the circumstances, we find it incredible that defendant, in the face of such a show of force, would, as the suppression court found, reach for his waistband as the arresting officer approached. Since we reject the officer's version of the encounter the record is bereft of "any credible evidence that the arresting officer possessed any 'particular facts from which he reasonably inferred that the [defendant] was armed and dangerous.' " *(People v Bezares,* 103 AD2d 717, 718.)

Thus, the seizure of the gun was without legal justification and the motion to suppress should be granted. Concur—Sullivan, Ross, Fein and Milonas, JJ.

Kupferman, J. P., dissents and would affirm.