■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DUANE N. WALLACE, Appellant. [760 NYS2d 702] —Appeal from a judgment of Genesee County Court (Noonan, J.), entered March 4, 2002, convicting defendant after a jury trial of sexual abuse in the first degree.

It is hereby ordered that the judgment so appealed from be and the same hereby is reversed on the facts, the indictment is dismissed and the matter is remitted to Genesee County Court for proceedings pursuant to CPL 470.45. All findings of fact made by the jury that are inconsistent with the memorandum herein are hereby reversed and new findings are made pursuant to CPLR 5712 (c) as contained in the following memorandum: On appeal from a judgment convicting him after a jury trial of sexual abuse in the first degree (Penal Law § 130.65 [3]), defendant contends that the verdict is against the weight of the evidence. We agree. The resolution of credibility issues by the jury and its determination of the weight to be given to the evidence are accorded great deference (*see People v Davis,* 191 AD2d 705, 706 [1993]; *People v Walker,* 191 AD2d 603, 604 [1993], *lv denied* 81 NY2d 1021 [1993]; *People v Adams,* 164 AD2d 546, 549 [1991], *lv denied* 77 NY2d 957 [1991]). Nevertheless, reversal is warranted where the testimony " 'is incredible and unbelievable, that is, impossible of belief because it is

manifestly untrue, physically impossible, contrary to experience, or self-contradictory'" (*People v Garafolo,* 44 AD2d 86, 88 [1974]; *see People v Black,* 226 AD2d 1113 [1996], *lv denied* 88 NY2d 1019 [1996]).

Defendant's great niece testified that, on the afternoon of June 16, 2001, defendant and his wife visited her family at their home. According to the testimony of defendant's great niece, defendant was seated with her on the living room couch when he allegedly put his hand under her dress and fondled her in front of her mother and his wife, among others. She gave conflicting testimony with respect to her position on the couch and with respect to whether she and defendant were playing a game called "top of the mountain" when the alleged incident occurred. Her mother testified to essentially the same facts, and she further testified that she was "very mad" when she allegedly saw defendant fondle her daughter. Nonetheless, she allowed her daughter to continue to play with defendant and did not say anything about the incident to defendant or his wife, despite the fact that they did not leave her home until approximately one hour later. Defendant's great niece was not taken to a doctor, and a statement to police was not given until six days later.

Defendant testified that his great niece was never seated on the couch in the position alleged by her. He testified that he and his great niece were playing "top of the mountain" that afternoon and that he never lifted her dress, nor did he ever inappropriately touch or fondle her. Defendant's wife corroborated defendant's testimony regarding the great niece's position on the couch, and she further testified that she never saw defendant lift the dress of her great niece and fondle her. The trial evidence was presented in less than one day, yet the jury deadlocked over the course of two days and sent numerous notes on issues of both fact and law. The jury rendered its verdict only after advising County Court that it was deadlocked, whereupon the court issued an *Allen* charge.

Upon our review of the evidence, we find that the evidence is both contrary to experience and self-contradictory (*see Garafolo,* 44 AD2d at 88) and that the jury "failed to give the evidence the weight it should be accorded" (*People v Bleakley,* 69 NY2d 490, 495 [1987]). Thus, reversal is required.

All concur except Scudder, J., who dissents and votes to affirm in the following memorandum.

Scudder, J. (dissenting). I respectfully dissent and would affirm the judgment of conviction. Although in my view, a different finding would not have been unreasonable, I cannot agree

with the majority that the jury " 'failed to give the evidence the weight it should be accorded' (*People v Bleakley,* 69 NY2d 490, 495 [1987])." Here, the jury considered the testimony of the victim and her mother, which conflicted with the testimony of defendant and his wife. The victim testified that she was lying on the couch behind defendant and his wife and that defendant reached behind him and placed his hand up her dress, between her legs, and pinched her vaginal area. The victim's mother testified that defendant is her aunt's husband, that they came to her home to bring food, and that they agreed to assist her in moving from the apartment in which she lived with her five children. The victim's mother testified that, from where she was seated across the room, she observed defendant place his hand up the victim's dress so that his arm, up to his elbow, was covered by the dress. She further testified that she immediately told the victim to get off the couch, and that defendant's wife was seated next to defendant and therefore could not observe defendant's actions. The victim's mother testified that defendant and his wife stayed approximately 30 minutes to one hour after the incident and that, when they left, she asked her daughter whether there was "something [she] want[ed] to talk to [her] about." The victim's mother testified that the victim explained what defendant did and that the explanation was consistent with her own observations of defendant's actions. According to the majority, the victim gave conflicting testimony with respect to her position on the couch. In my view, that discrepancy in the victim's testimony is of no moment. Although the victim identified an exhibit depicting her as lying behind defendant with her legs straight out before her and she testified at trial that her legs were in fact bent, the victim consistently testified that she was lying behind defendant on the couch when the crime occurred. The majority further notes that a statement to the police was not given until six days later. Significantly, however, the victim's mother immediately arranged for a friend to care for her other children while she took the victim to the police station that same day, despite the fact that she is a single mother and that defendant and his wife had been providing her with assistance. The evidence that the victim's mother took the victim to the police station on the day of the incident and that she signed a deposition six days later is not controverted. I submit that the majority misconstrues the evidence by implying that the victim's mother waited six days to report the incident to the police. In addition, the majority seems to consider it significant that the victim was not examined by a physician, yet the majority provides no support for its implicit conclusion that a physical examination

would have provided corroborative evidence that defendant touched the victim's vaginal area. I am not aware of any such support for that implicit conclusion.

Defendant and his wife both testified that the victim was seated on the back of the couch with her legs draped over the couch behind defendant's back and that it therefore would have been physically impossible for defendant to reach up under the victim's dress. That testimony conflicts with the statement given by defendant to the police, wherein he stated that, "[w]hen she was [lying] behind me[,] I would reach behind me with both hands and move her knees." When confronted with that statement at trial, defendant testified only that he was "under heavy pain medication * * * at the time," which in my view, and apparently in the view of the jury, does not explain the discrepancy between defendant's statement and trial testimony.

In my view, the majority mischaracterizes the testimony of the victim (which also was essentially the same as that of her mother) when it writes that the victim testified that, while "defendant was seated with [the victim] on the living room couch," defendant "allegedly put his hand under her dress and fondled her in front of her mother and his wife, among others." However, that mischaracterization provides support for the majority's position, citing *People v Garafolo* (44 AD2d 86, 88 [1974]), "that the evidence is * * * contrary to experience * * *." In *Garafolo,* the Second Department, unlike the suppression court itself, rejected the testimony of a police officer who testified at the suppression hearing that, when he observed defendant, he could "see into [a] brown paper bag which the defendant had obligingly left open at the top, discerned that one of the cartons had a loose flap and that a cigarette pack *inside the carton* had a North Carolina decal on the *bottom* of it" (*id.* at 87). I simply cannot agree with the majority that the evidence presented by the victim and her mother is "contrary to experience and self-contradictory." The jury was presented with two versions of what transpired between the victim and defendant, i.e., either the victim was lying behind defendant and he subjected her to sexual contact (*see* Penal Law § 130.65 [3]) or the victim was seated on the back of the couch with her legs dangling behind defendant and they were playing "top of the mountain." The jury rejected the version proffered by defendant and his wife and thus rejected the theory that the acts described by the victim were, inter alia, "physically impossible."

Furthermore, in my view, the length of the trial, the length of the jury deliberations, the number of notes sent by the jury

to County Court, and the fact that the verdict was rendered approximately three hours after the court gave an *Allen* charge are factors that do not bear upon the quality of the evidence and the credibility of the witnesses and therefore are not relevant to the issue whether the verdict is against the weight of the evidence. Conflicting evidence was presented at trial and the jury, which had the "advantage of observing the witnesses and, necessarily, [was] in a superior position to judge veracity than an appellate court, which reviews but the printed record" (*People v Shedrick,* 104 AD2d 263, 274 [1984], *affd* 66 NY2d 1015 [1985], *rearg denied* 67 NY2d 758 [1986]), made a credibility determination resulting in a guilty verdict. In my view, there is no basis upon which to disturb that credibility determination. The cogent discussion in *People v Cohen* (223 NY 406, 411 [1918], *rearg denied* 227 NY 623 [1919]) is particularly apt here: "If diverse inferences may properly be drawn from the testimony; if witnesses contradict each other, or if their character is criticized; if the probability of the stories told by them is questioned; [or] if their interest in the result may influence them, [then] it is for the jury to decide where the truth lies. We may not reverse its finding because some of us or all of us would have hesitated to reach the same conclusion." Present—Pigott, Jr., P.J., Wisner, Scudder, Burns and Gorski, JJ.