OPINION OF THE COURT
William P. McCooe, J.
Order dated September 17, 2003 modified, on the law, by deleting the provisions thereof granting those branches of the defendant’s motion which were to suppress the marijuana recovered from the apartment living room and defendant’s statements to the police and substituting therefor a provision denying those branches of the motion; as so modified, order affirmed.
At a Huntley/Mapp/Dunaway hearing before Judicial Hearing Officer (JHO) Harold Enten, Sergeant William Planeta, Detective Earl Lynch, Police Officer Russell Argila and Police Officer John Baumeister of the Bronx Anti-Crime Unit testified that while in plain clothes driving an unmarked vehicle they observed a car idling at a hydrant which had excessively tinted windows. The officers exited their car and Detective Lynch asked the defendant, who was alone, for his license and registration. The defendant did not have a license and he gave his name as “Joseph Perez,” and date of birth as July 3 but “stalled” on the year. Sergeant Planeta told him that if he lied about his name and date of birth he was committing a crime. Defendant then gave his name as “Jose Manuel Perez Rivera” and date of birth as December 3, 1971. After a computer check failed to locate a license with that information, defendant then said he had a “Puerto Rican” license at his apartment which his mother could bring downstairs. The police agreed to follow the defendant home.
When they arrived at the apartment house, the defendant told them his mother was in Puerto Rico and asked the officers to come upstairs. While Planeta and Lynch parked the car, Argila and Baumeister were invited into the studio apartment and waited while defendant unsuccessfully looked for the identification and the license, called his mother who was in Puerto Rico, and “buzzed” Planeta and Lynch into the building. When Planeta arrived at the front door to the studio apartment, *11 it was ajar. He entered and heard the television playing and shower “running.” He walked to the bathroom and found that the shower was “broken.” As a “security measure” to determine “if anyone else was inside the studio apartment,” he walked into the kitchen area and saw a bed where he noticed a Sprint bill in the name of “Jose Diaz” on the bedside table together with two 9 millimeter bullets in an ashtray. Planeta returned to the living room and when defendant offered no explanation for the name “Jose Diaz” on the Sprint bill, Detective Lynch arrested him for driving without a license and possession of ammunition. The defendant began to “scream” that the police should leave the apartment. Defendant also made some statements regarding money. He said that he had $4,000 in cash to pay bills and $28,000 in cash from music promotion gigs, and told the officers that he gave a false name because of an outstanding warrant. After the arrest, Planeta “made some other observations,” noticing a “gun and ammo” magazine and five individual barrel bolts going under and in the floor on the front door, in addition to two or three other locks in the frame which he deemed “excessive.” Officer Baumeister told Planeta that he found a “small amount of marijuana” in the living room ashtray. Defendant, still screaming that the police had illegally searched, was taken to the police station and gave a statement that was memorialized but which he refused to sign.
Officers Argila and Baumeister secured the apartment that night and the following morning Detective Lynch obtained a search warrant. In the subsequent search, the police recovered 31 9 millimeter bullets under the defendant’s mattress, a knapsack under the bed with $42,000 in cash, additional bags of money underneath the sink and in the dresser (total cash: $188,000), a black duffle bag containing drug paraphernalia (cutting agents, lactose, lidocaine, metal strainers, tape, etc.), scales, rubber bands and gloves. On cross-examination, Planeta stated that although Lynch might have seen additional rounds of ammunition during Lynch’s initial “sweep,” he did not know about them prior to executing the search warrant. Detective Lynch’s affidavit in support of the search warrant stated that he saw two bullets in the ashtray and “a clear plastic bag of ammunition containing at least 20 rounds.”
Defendant’s neighbor, Carol Morales, the only witness for the defense, testified that she looked through the peephole and saw defendant’s apartment door open, with a man outside and other individuals inside. After opening her front door she saw defen *12 dant handcuffed on the floor, who told her the police were “looking illegally.” The officer in the hallway told her to go back inside her apartment.
The JHO, finding the officers’ testimony credible, denied the defendant’s motion to suppress the physical evidence and the statements. He found that after being invited into the studio apartment the officers observed the marijuana and ammunition, arrested the defendant, and then seized the remaining items after obtaining a warrant. He found that the statements were either spontaneously made at the scene and did not require Miranda warnings or were made after defendant was arrested and the Miranda warnings were given.
The Criminal Court Judge agreed with the JHO that the police had probable cause to arrest “from the time they came across [defendant’s] illegally parked vehicle [and after he] gave them false information consisting of two different names, which . . . could not be confirmed by . . . computer record check.” The court rejected the JHO’s further credibility determinations, stating that it was not “persuaded as to [the] believability of the story of the officers with respect to their following the defendant to his home after he gave them two false names and dates of birth and failed to produce a driver’s license, or with respect to any of the subsequent events thereto.” This included whether the officers gained access to the apartment with defendant’s “permission or [if] defendant invited them into his home.” The court was “not convinced that the contraband” was discovered after the search warrant was obtained, rather than “at the time” of the arrest. Also, “significant discrepancies” existed between Planeta’s testimony and Lynch’s affidavit “with respect to what the officers found in the apartment” on the night of the arrest and prior to the search the next morning. The court held the contraband was “illegally obtained” and the statements after defendant’s arrest “derived from that illegality” although the Miranda warnings had been given.
The People claim that the court had “no basis to controvert the [JHO’s] credibility findings” when the officers’ testimony was not “incredible as a matter of law.” Defendant has not submitted an appellate brief.
At the hearing, defendant’s counsel argued that the officers’ testimony was “incredible” based on their “conflicting accounts” concerning the initial observation of the tinting on defendant’s car and his subsequent questioning, as well as how the officers gained access to the apartment. He argued that the *13 police would not permit someone with a felony warrant who provided different names and dates of birth to obtain identification at his apartment nor would he invite the officers inside. Also “incredible” was the police claim that security sweeps only uncovered two bullets and the marijuana. Finally, defendant argued that the police searched on the date of the arrest without a warrant. Once the trial court and our dissenting colleague concluded that the police explanations as to how and why the police came to the defendant’s apartment were unbelievable or incredible, they in effect applied the falsus in toto rule and rejected the balance of the police testimony.
The police testimony is not incredible. The undisputed fact that the police initially did not arrest the defendant, give him a ticket or take any action against him supports their version of the events.
There is no evidence contradicting the police officers’ testimony nor is there an alternative version of the factual events offered by the defense. The dissent relies upon the frequently cited case of People v Garafolo (44 AD2d 86 [2d Dept 1974]) for the proposition that the findings of the trier of facts should be disregarded when the evidence is incredible as a matter of law. Garafolo is readily distinguishable. As stated (at 88), “The defendant told a very different story of the events preceding the arrest.” There is absolutely no evidence of the “events preceding the arrest” by the defendant in this case since he did not testify. Therefore a finding of incredibility must be based solely upon the testimony of the police officers.
The logical reason that the anti-crime police officers did not then arrest the defendant and accepted his offer to go to the apartment was that the officers were playing a cat and mouse game with him. Based upon the officers’ extensive experience which was established at the hearing, the preceding circumstances regarding their encounter with him in a high crime area aroused the officers’ suspicions that this defendant, who was clearly rattled by them, would lead them to evidence of more serious criminal activity. The officers gave the defendant enough rope to hang himself. Neither the Criminal Court Judge nor the dissent has offered an alternative explanation as to why the police allowed the defendant to simply drive away or to explain how and why they arrived at his apartment house and entered his apartment. Nor is there any testimony contradicting the police testimony.
“While the Criminal Court is required to indepen *14 dently review the report of the Hearing Officer (CPL 255.20 [4]), it is established that issues of credibility are primarily for a hearing court to resolve (People v McCormick, 162 AD2d 878; People v Prochilo, 41 NY2d 759). The uncontradicted testimony of the police officer, the sole witness at the hearing, was not incredible as a matter of law (cf., People v Quinones, 61 AD2d 765). Criminal Court was therefore not warranted in rejecting the Hearing Officer’s findings on credibility because of the court’s own general skepticism” (People v Jones, 152 Misc 2d 113, 114 [App Term, 1st Dept 1992], appeal dismissed 80 NY2d 833 [1992]).
That there were some discrepancies among the four police officers’ testimony, including the sequence of events, is understandable. The events took place in a very short period of time, the officers were acting independently and the hearing was held 10 months later. The fact that the defendant could not locate the Puerto Rican license after his search and talking to his mother does not establish that he does not have it, only that he could not locate it. It is not surprising that once his New York license was suspended he got a Puerto Rican license.
The record supports the JHO’s finding that the police entry into the apartment was based on consent in the form of defendant’s conduct in first asking the police to accompany him to the apartment and then inviting Officers Argila and Baumeister inside to wait while he obtained his license and identification (see People v Benton, 13 AD3d 97 [1st Dept 2004]). The seizure of the marijuana in the living room was permissible under the plain view doctrine because the police were lawfully in a position to view the marijuana in that room after the defendant invited them inside (People v Diaz, 81 NY2d 106, 110 [1993]; People v Polanco, 292 AD2d 29, 34 [1st Dept 2002]). The bullets must be suppressed because they were viewed in an area where the police were not lawfully present. The People have not shown sufficient exigent circumstances that a “security sweep” of the balance of the studio apartment was necessary since there was no proof of an emergency (People v Garrett, 256 AD2d 588 [2d Dept 1998], lv denied 93 NY2d 924 [1999]). The arrest was valid and the spontaneous statements made in the apartment and those made after the giving of the Miranda warnings should not be suppressed. Probable cause did not exist to issue the search warrant absent the admission of the bullets. While there is a presumption of validity attached to the warrant and the *15 court has “applied ordinary common sense” (see People v Traymore, 241 AD2d 226, 230-231 [1st Dept 1998], lv denied 92 NY2d 907 [1998]), there is a lack of an adequate basis “even under the more relaxed standard of proof sometimes suggested for warrant cases” (People v Bigelow, 66 NY2d 417, 424 n [1985]).