# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

73

KA 11-01291

PRESENT: CENTRA, J.P., FAHEY, LINDLEY, SCONIERS, AND WHALEN, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

JABRE DAVIS, DEFENDANT-APPELLANT.

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (KRISTEN MCDERMOTT OF COUNSEL), FOR DEFENDANT-APPELLANT.

JABRE DAVIS, DEFENDANT-APPELLANT PRO SE.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Onondaga County Court (William D. Walsh, J.), rendered March 30, 2010. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and criminal possession of a weapon in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) and criminal possession of a weapon in the second degree (§ 265.03 [3]), defendant contends in his main and pro se supplemental briefs that the verdict is against the weight of the evidence. We reject that contention. As defendant concedes, he was present when the victim was shot in the head at close range, and he was identified as the shooter in separate showup procedures by two eyewitnesses to the shooting, both of whom later identified defendant in a lineup. Moreover, one of the eyewitnesses also identified defendant in a surveillance video taken at a store that defendant had entered shortly before the shooting occurred. The video showed defendant and the three other men who were with him when the victim was shot, one of whom defendant claims to have been the shooter. Upon observing the four men in the video, the eyewitness informed the police that, although he initially doubted whether he had correctly identified defendant in the showup procedure, he was now certain that defendant was the person he had seen shoot the victim. At trial, both eyewitnesses unequivocally identified defendant as the shooter. The eyewitnesses did not know defendant prior to the shooting, and neither had any apparent motive to accuse him falsely.

In addition to the eyewitness testimony, the People introduced evidence that, after the shooting, defendant ran from the scene and hid in a nearby house, which was surrounded by the police. Defendant refused to come out of the house for approximately 30 minutes and, when he eventually emerged, he was wearing a different shirt than the one he had been wearing when the victim had been shot. Defendant then lied to the police, stating that he had not heard any shots being fired and that he had not observed the victim involved in an altercation immediately before the fatal shot was fired. Defendant's actions following the shooting evinced a consciousness of guilt.

As defendant correctly notes, both eyewitnesses testified that the shooter had been wearing a white T-shirt with air brushing on the front and back, and the surveillance video showed that defendant was wearing a white T-shirt with air brushing on the front only, while another man present at the time of the shooting had been wearing a white T-shirt with air brushing on the front and back. The other man in a white T-shirt was not apprehended and was not identified. Defendant also points to the fact that the police searched the house into which defendant fled, as well as the surrounding neighborhood, and did not find any firearms. We note, however, that the prosecutor argued that defendant had sufficient time in which to hide the murder weapon before he entered the house and that, given the chaotic scene following the shooting, the eyewitnesses were simply mistaken regarding the presence of air brushing on the back of the shooter's T-shirt.

This case turned largely upon the reliability, as opposed to the credibility, of the two eyewitnesses who repeatedly and consistently identified defendant as the shooter, and neither of whose identification was influenced by the other. We are mindful that "mistaken eyewitness identifications play a significant role in many wrongful convictions" (*People v Santiago*, 17 NY3d 661, 669), and we are cognizant of our duty to conduct an independent assessment of all of the proof (*see People v Delamota*, 18 NY3d 107, 116-117). In our view, however, this is not an appropriate case to substitute our reliability determinations for those of the jury, inasmuch as the identifications of defendant by the eyewitnesses were not "incredible and unbelievable, that is, impossible of belief because [they were] manifestly untrue, physically impossible, contrary to experience, or self-contradictory" (*People v Rumph*, 93 AD3d 1346, 1347, *lv denied* 19 NY3d 967 [internal quotation marks omitted]; *see People v Wallace*, 306 AD2d 802, 802-803). "Sitting as the thirteenth juror . . . [and] weigh[ing] the evidence in light of the elements of the crime[s] as charged to the other jurors" (*People v Danielson*, 9 NY3d 342, 349), we conclude that, although a different verdict would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (*see generally People v Bleakley*, 69 NY2d 490, 495; *People v Kalen*, 68 AD3d 1666, 1666-1667, *lv denied* 14 NY3d 842).

Defendant further contends that the identifications of him by the two eyewitnesses were the product of inherently suggestive showup procedures, and that County Court therefore erred in denying his

motion to suppress their identification testimony.  We reject that
contention as well.  Although showup identification procedures are
generally disfavored (*see People v Ortiz*, 90 NY2d 533, 537), such
procedures are permitted "where [they are] reasonable under the
circumstances—that is, when conducted in close geographic and temporal
proximity to the crime—and the procedure used was not unduly
suggestive" (*People v Brisco*, 99 NY2d 596, 597; *see Ortiz*, 90 NY2d at
537; *People v Jackson*, 78 AD3d 1685, 1685-1686, *lv denied* 16 NY3d
743).  Here, the showups were conducted within 70 minutes of the
shooting, during the "course of a continuous, ongoing investigation"
(*People v Woodward*, 83 AD3d 1440, 1441, *lv denied* 17 NY3d 803; *see
Brisco*, 99 NY2d at 597), and less than one half of a mile from the
crime scene.  Thus, the court properly denied defendant's motion to
suppress the subject identification testimony.

Contrary to defendant's further contention, the identification of
him by one of the prosecution witnesses in the store surveillance
video was not unduly suggestive.  "[T]here is nothing inherently
suggestive" in showing a witness a surveillance video depicting the
defendant and other individuals, provided that the "defendant was not
singled-out, portrayed unfavorably, or in any other manner prejudiced
by police conduct or comment or by the setting in which [the
defendant] was taped" (*People v Edmonson*, 75 NY2d 672, 676-677, *rearg
denied* 76 NY2d 846, *cert denied* 498 US 1001).  Here, defendant was
shown in the video with three other people, one of whom defendant
claims to have been the shooter, and defendant was not singled out or
portrayed unfavorably, or in any other manner prejudiced.  In a
related contention, defendant asserts that the identification of him
in the surveillance video is tantamount to an identification from a
photo array, and that the court therefore erred in allowing the
witness in question to testify at trial that he identified defendant
in the video.  Defendant failed to preserve that contention for our
review, and we decline to exercise our power to review it as a matter
of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

There is no merit to defendant's contention that the lineup
procedures employed by the police were unduly suggestive.  Although
defendant and one filler have somewhat lighter skin than the other
participants, it is well settled that the police need not surround a
defendant in a lineup with individuals nearly identical in appearance
(*see People v Chipp*, 75 NY2d 327, 336, *cert denied* 498 US 833; *People
v Diggs*, 19 AD3d 1098, 1099, *lv denied* 5 NY3d 787, *amended on rearg* 21
AD3d 1438).  Having reviewed photographs of defendant with the other
lineup participants, we conclude that the "the alleged variations in
appearance between the fillers and the defendant were not so
substantial as to render the lineup impermissibly suggestive" (*People
v Brown*, 89 AD3d 1032, 1033, *lv denied* 18 NY3d 922).

We have reviewed defendant's remaining contentions in his main
and pro se supplemental briefs and conclude that they lack merit.

Entered:  March 21, 2014                    Frances E. Cafarell
                                            Clerk of the Court