■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR VELAZQUEZ, Appellant. — Judgment of the Supreme Court, Bronx County (Archie Gorfinkel, J.), rendered on December 9, 1982, convicting defendant, following a jury trial, of criminal possession of a weapon in the third degree and criminal possession of a controlled substance in the seventh degree and sentencing him, as a second felony offender, to concurrent terms of imprisonment of from 3½ to 7 years and 1 year, is affirmed.

The issue on appeal involves the denial of defendant's motion to suppress. In that connection, a hearing was held on October 28, 1982 to determine the admissibility of a loaded .357 magnum and 10 glassine bags of cocaine recovered from the defendant's person following the stop of the vehicle in which the defendant was a passenger. On December 15, 1981, at approximately 9:30 P.M., Sergeant Robert Di Martini and Detective Ronald Peragine were on duty when they received a radio run concerning a robbery in progress at a gas station in the vicinity of Bruckner Boulevard and Bronx River Avenue in The Bronx. As the officers proceeded in that direction, a car carrying two men sped by at between 50 and 55 m.p.h. Sergeant Di Martini claimed to note that the men were Hispanic, and the perpetrators of the reported robbery had also been described as Hispanic. The officers gave chase, accelerating their vehicle and eventually catching up with the other automobile. Sergeant Di Martini approached the driver and requested his license and registration. The driver exited the car, leaving the door open, thus causing the interior overhead light to go on. In addition, the street lamps were lit, so Sergeant Di Martini could see the inside of the vehicle. According to Sergeant Di Martini, the defendant appeared nervous, and there was a bulge under the left side of his black leather jacket which resembled the outline of the butt of a gun. Sergeant Di Martini thereupon instructed the driver to accompany him to the passenger side and told Detective Peragine to ask the passenger to step out. The defendant complied, allegedly giving Sergeant Di Martini a little shove with his right hand while moving his left hand toward his waistband. Sergeant Di Martini reached for the bulge, felt a gun under the jacket and removed a .357 magnum revolver. The defendant was

then placed under arrest, and a further frisk revealed the presence of 10 glassine envelopes in the defendant's left-hand jacket pocket.

In denying the motion to suppress, the court determined that since the car was traveling too fast on a rainy night and the officers entertained suspicion that the two men in the vehicle "might require some inquiry" with respect to the robbery, there were reasonable grounds for the stop. The court also found that upon observing the bulge, Sergeant Di Martini acted reasonably to protect himself and his partner. However, the court expressed doubt that Sergeant Di Martini had seen the faces of the men in the speeding car and, therefore, had been able to note that they were Hispanic.

Regardless of whether or not the officers possessed an adequate basis to stop the automobile herein for the purpose of investigating the robbery (see *People v John BB.*, 56 NY2d 482), there can be no question that it is proper to stop a speeding car. (*People v Livigni,* 58 NY2d 894; *People v Ingle,* 36 NY2d 413.) Although the hearing court did not accept Sergeant Di Martini's contention that he observed that the vehicle's occupants were Hispanic in appearance, it did credit his statements that he saw the outline of a gun butt through the defendant's leather jacket. Under these circumstances, the officers, in order to insure their safety, were entitled to request that the defendant step out of the car and then frisk him. (*People v De Bour,* 40 NY2d 210.) Further, the record herein does not support a conclusion that Sergeant Di Martini's testimony was incredible as a matter of law, particularly in view of the established rule that matters of credibility are to be resolved by the trier of fact, who is in the best position to observe the various witnesses and evaluate their respective testimony and whose findings should, therefore, be accorded great weight. (*People v Kennedy,* 47 NY2d 196; *People v Carter,* 37 NY2d 234; *People v Giuliano,* 102 AD2d 559; *People v Siu Wah Tse,* 91 AD2d 350; *People v Mendez,* 75 AD2d 400; *People v Samuels,* 68 AD2d 663, affd 50 NY2d 1035.) Since the hearing court believed Sergeant Di Martini's assertion that the officers stopped the automobile because it was speeding and that he thereafter noted the bulge under the defendant's leather jacket, it would be mere speculation for us to conclude that this sequence of facts could not possibly have occurred. Concur — Sandler, J. P., Sullivan, Milonas and Alexander, JJ.

Carro, J., dissents in a memorandum as follows: At issue is whether the stop of the car in which defendant was a passenger constituted an "unreasonable * * * seizure" thus requiring suppression of the gun and contraband allegedly found upon him.

(US Const, 4th Amdt; NY Const, art I, § 12). Because the People are charged with the threshold burden of *"going forward* to show the legality of the police conduct in the first instance (*People v. Malinsky,* 15 N.Y.2d 86, 91, n.2)" (*People v Whitehurst,* 25 NY2d 389, 391 [emphasis in original]), we need only examine the testimony of the sole witness at the *Mapp* hearing to determine the correctness of the trial court's denial of the suppression motion. (*People v Berrios,* 28 NY2d 361, 369.)

Police Sergeant Di Martini testified that he and Detective Peragine were on plainclothes patrol in an unmarked car the evening of December 15, 1981. Shortly before 9:30 P.M. they received a radio run of robbery "in progress at a gas station * * * the people committing the robbery were two male Hispanics, and it gave a description, somewhat description, of a vehicle — I don't remember what it was — that they were using a car * * * It was somewhere on Bronx River Avenue and Bruckner Boulevard, in that vicinity".

"At that point we started * * * proceeding southbound on Bronx River Avenue and a vehicle passed us. It was speeding, and it was very rainy that night. It was like a winter night, and the vehicle went flying by us * * * We were doing about thirty, thirty-five. I guess the vehicle had to be doing fifty, fifty-five because we had to go up to at least fifty or better to catch him. We caught up with the vehicle at Bronx River Avenue and Bruckner Boulevard and pulled the vehicle over under the underpass." When asked by the court — "How long did you follow that car before you stopped it and pulled it over?" — the sergeant answered, "two very long blocks. The blocks are about three city blocks." The court: "A good quarter mile?" The witness: "Yes, sir."

The officer also testified, on cross-examination, that as the car initially passed him, "I saw what I believed to be two Hispanics."

"THE COURT: On a dark and rainy night?

"THE WITNESS: Yes, sir.

"THE COURT: You saw what you thought were two Hispanics going at least twenty miles an hour more than you were?

"THE WITNESS: Yes, sir."

Upon this testimony (and after further questioning not germane here), the court found "a reasonable basis for stopping the car. It was apparently going too fast on a rainy night and there is some suspicion that the two men in the car might require some inquiry as to whether they might be some perpetrators of a robbery that had recently taken place." The court did, however,

indicate its disbelief in the sergeant's assertion that he identified the men as Hispanics as they sped by: seeing "two people" or "two men" was sufficient.

All of this — the sergeant's testimony for the prosecution and the trial court's factual findings — is simply incredible, as a matter of law. (Cf. *People v Smith,* 77 AD2d 544, 545 [citing *People v Quinones,* 61 AD2d 765, and *People v Garafolo,* 44 AD2d 86].) Let me count the ways: (1) It is impossible for two men to be both committing a robbery "in progress" and also be speeding towards the scene of that crime. (2) Even had the sergeant been capable of perceiving the two men as Hispanic, of what significance is that in The South Bronx? (3) Is it logical that the officers would only be traveling 30 or 35 mph in response to a robbery but a few blocks away, and only accelerate to stop a speeding car? (Incidentally, the place they stopped the car — Bronx River Avenue and Bruckner Boulevard — is the same location given for the robbery.) (4) Would a sergeant and a detective, responding to a robbery in progress, bother with a speeding car that was not possibly involved in that robbery?

Since there is no good reason for the officers' asserted actions (save the insulting notion that they were looking for an excuse *not* to respond to the robbery), I must conclude that the stop of the car containing defendant did not occur as described. In other words, the sergeant's testimony is "impossible of belief because it is manifestly untrue, physically impossible, contrary to experience [and] self-contradictory, [and] is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case." (22 NY Jur, Evidence, § 649 [quoted in *People v Garafolo, supra,* at p 88].)

The People's failure to come forward with credible evidence of the legality of the stop requires that the judgment appealed from be reversed and the motion to suppress, granted.