(July 3, 1990)

■ The People of the State of New York, Respondent, v Ramon Rojas, Appellant.—Judgment of the Supreme Court, New York County (Herbert Altman, J., at hearing; Alvin Schlesinger, J., at trial and sentence), rendered June 23, 1987, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree and sentencing the defendant, as a predicate felon, to 4½ to 9 years in prison, unanimously reversed on the law, the motion to suppress granted and the matter remanded for a new trial.

The defendant was convicted, after a jury trial, of criminal sale of a controlled substance in the third degree. He was apprehended as a result of a buy-and-bust operation, the relevant details of which were disclosed during the *Mapp/ Dunaway* hearing held upon his motion to suppress certain physical evidence.

At the hearing the sole witness for the People was Detective Coor. Coor testified that on the afternoon of January 19, 1987 he was assigned to a unit backing up undercover officers in a buy-and-bust operation conducted at 94th Street and Amsterdam Avenue in Manhattan. While on this assignment, Coor received a radio transmission from one of the undercover officers (No. 23248) stating that the officer had just purchased some crack cocaine from "two defendants" standing at 94th Street and Amsterdam Avenue. The suspects were described to Coor who then proceeded to the designated location to arrest them. When he arrived, he observed four people being held at gunpoint by undercover officer No. 21358. (It should be emphasized that officer No. 21358 was not the officer who had made the buy and transmitted the description of the suspects.) Upon Coor's arrival, the undercover holding the suspects immediately left the scene. A few minutes later, however, he

1

radioed Coor and advised him that he had seen the appellant throw a bag of drugs and currency to the ground behind a nearby set of garbage cans. Drugs and currency were, in fact, found by Coor in the location described by the undercover. Two of the four suspects were eventually "cut loose" as it was determined that they had had nothing to do with the drug transaction.

It was at the outset the People's burden to go forward and demonstrate the legality of the police conduct (People v Malinsky, 15 NY2d 86, 91, n 2; People v Wise, 46 NY2d 321, 329; People v Smith, 77 AD2d 544, 545). This they utterly failed to do. As can be seen, there was absolutely no showing at the hearing that the officer who apprehended the suspects (undercover officer No. 21358) had probable cause to do so. Coor's testimony gave no indication whether undercover No. 21358 had witnessed the drug transaction, nor was there any indication whether undercover No. 21358 had had the sellers described to him by the undercover who purchased the drugs (No. 23248).

Although the hearing court, citing the lack of probable cause, found the arrest illegal, it declined to suppress the drugs and currency found behind the garbage cans since it was apparently of the view that the presence of those materials in that location was unconnected with the illegal arrest. In moving to suppress the currency and drugs, however, the defendant specifically alleged that his "action in throwing the crack to the ground was a direct result of the police officer's intrusive action of pointing guns [sic] at [him]." It was initially the People's burden to controvert this allegation by showing the abandonment to have been voluntary, for as the Court of Appeals recognized in People v Howard (50 NY2d 583), the voluntary relinquishment of contraband in a police officer's presence amounts to a waiver of Fourth Amendment claims. The court thus observed that the issue of abandonment is "essentially a question of constitutional law" (supra, at 593), and continued, "[t]here is a presumption against the waiver of constitutional rights. It is the People's burden to overcome that presumption by evidence of ' "an intentional relinquishment or abandonment of a known right or privilege" ' (Brookhart v Janis, 384 US 1, 4; Johnson v Zerbst, 304 US 458, 464; People v Whitehurst, 25 NY2d 389, 391)" (supra, at 593; see also, People v Berrios, 28 NY2d 361, 367-368; People v Quinones, 61 AD2d 765, 766). Plainly, the People did not meet their burden. There was no evidence presented at the Mapp/

*Dunaway* hearing which could have justified the motion court's inference of voluntary abandonment.

The People also argue that even if the arresting officer did not himself possess probable cause, the arrest and ensuing seizure of the contraband were nevertheless ultimately justifiable since an officer with the requisite knowledge (i.e., Coor) would have shortly arrested the appellant anyway. This, however, is not a case in which the police action would have been unobjectionable but for the fact that the wrong officer made the arrest *(cf., United States v Ragsdale,* 470 F2d 24). Here, the actions of the arresting officer constituted precisely the sort of unreasonable intrusion that the Fourth Amendment forbids: two people having absolutely nothing to do with the drug sale were arrested at gunpoint. It is to prevent the recurrence of just such excesses that the rules of exclusion promulgated under the Fourth Amendment exist and ought to be enforced.

As we conclude that the People failed to meet their burden of going forward to show the legality of the police conduct in the first instance and, therefore, that the suppression motion ought to have been granted, it is necessary to determine whether motion court's failure to grant the motion requires reversal. The People maintain, in essence, that, assuming any error occurred, it was harmless. They note that the cocaine allegedly purchased from the appellant was properly admitted as was the trial testimony of the purchasing undercover officer who identified the appellant as one of the sellers. The error in the admission of the challenged evidence, however, was of constitutional magnitude and must be shown harmless beyond a reasonable doubt if the conviction is to be allowed to stand *(People v Crimmins,* 36 NY2d 230, 237). The theory of the defense was that although the appellant, among others, was present at the scene of the transaction, he did not participate in the sale of the drugs to the undercover officer. The introduction of the illegally obtained evidence, which included some $20 of marked buy money, in conjunction with the trial testimony of the arresting officer linking the buy money and drugs to the appellant, had the obvious effect of bolstering the purchasing undercover's identification testimony. Thus, a single witness identification which, standing by itself, was hardly overwhelming evidence of guilt, was by virtue of the improperly received proof, rendered virtually unassailable. The error then cannot be deemed harmless, much less harmless beyond a reasonable doubt. Concur—Murphy, P. J., Ross, Milonas, Kassal and Rubin, JJ.