THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BRANDON ALEXANDER, Respondent. [882 NYS2d 473]—

Appeal by the People from an order of the Supreme Court, Queens County (McGann, J.), dated November 19, 2007, which, upon a decision of the same court rejecting the recommendation of a Judicial Hearing Officer (Demakos, J.H.O.), dated November 15, 2007, made after a hearing, granted that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the order is reversed, on the law, and that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement officials is denied.

The defendant was a suspect in a series of robberies committed in Queens County between June 18, 2006 and September 20, 2006. On September 29, 2006 he was arrested by Nassau County police and questioned in Nassau County about crimes allegedly committed by him in that county. The same day, Detective Richard Dietrich of the New York City Police Department was informed of the arrest and traveled to Nassau County to question the defendant about the Queens robberies. Approximately 11 hours after the defendant was arrested, Detective Dietrich was given access to him. He administered fresh *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966])

and elicited a waiver. Detective Dietrich then showed the defendant two surveillance photographs taken during a robbery of a Queens bodega. The photographs depicted a man holding a gun on the storekeeper. The defendant identified himself as the person holding the gun, and the detective noted that, in the photographs, the defendant was wearing the same green camouflage jacket he was wearing during questioning. The defendant signed the backs of the two photographs to confirm that he was the perpetrator depicted. The detective then questioned the defendant about four other robberies of Queens bodegas. The defendant made four oral statements relating to the separate robberies. The detective transcribed each statement, and the defendant signed each one without making changes.

Thereafter, the defendant was charged with the Queens robberies in two separate indictments. In an omnibus motion, he moved to suppress his statements on Fourth, Fifth, and Sixth Amendment grounds. In their response to the defendant's motion, the People consented to a hearing to determine the voluntariness of the defendant's statements (*see People v Huntley*, 15 NY2d 72 [1965]), but they did not address that branch of the defendant's motion which alleged that the defendant's statements to Detective Dietrich were the suppressible fruit of a Fourth Amendment violation (*see Dunaway v New York*, 442 US 200 [1979]). The court ordered a hearing to determine the lawfulness of the defendant's arrest as well as the voluntariness of his statements. At the hearing, however, the People failed to present any evidence with respect to probable cause for the defendant's Nassau County arrest.

The Judicial Hearing Officer (hereinafter the JHO) who conducted the hearing recommended that the branch of the defendant's omnibus motion which was to suppress his statements be denied. The JHO reasoned that the defendant's arrest by Detective Dietrich was lawful because the defendant already had been arrested by the Nassau County police. The JHO also concluded that the defendant's statements to Detective Dietrich were voluntarily made. The Supreme Court, however, rejected the JHO's recommendation and held that, by failing to present any evidence as to the lawfulness of the defendant's arrest in Nassau County, the People failed to meet their burden of going forward (*see People v Dodt*, 61 NY2d 408, 415 [1984]; *People v Berrios*, 28 NY2d 361, 367 [1971]; *People v Moses*, 32 AD3d 866, 868 [2006]). The court denied the People's request to reopen the suppression hearing, rejected the People's argument that the statements to Detective Dietrich were attenuated from any unlawful arrest, and granted that branch of the defendant's

omnibus motion which was to suppress the statements he had made to Detective Dietrich. We reverse.

Even assuming that the defendant was not lawfully arrested in Nassau County, the record establishes that his statements to Detective Dietrich were sufficiently attenuated from the arrest to dissipate any taint. Detective Dietrich did not question the defendant about the Queens County cases until some 11 hours after his arrest, and was not present in the room while the Nassau County police were questioning the defendant about the Nassau County crimes. When Detective Dietrich began questioning the defendant, he first advised the defendant of his rights and told him the scope of the Queens investigation. He did not ask the defendant anything about the questioning relating to the Nassau County case.

When taken together, the length of time between the defendant's arrest by the Nassau County police and the discrete questioning 11 hours later by a different detective about an entirely different subject, the administering of a fresh set of *Miranda* warnings, and the defendant's being shown the surveillance photograph capturing him perpetrating a robbery in Queens, constituted a definite and pronounced break sufficient to dissipate the taint of any prior illegality associated with the defendant's arrest (*see People v Girdler*, 50 AD3d 1157 [2008]; *People v Monk*, 50 AD3d 925 [2008]; *cf. People v Paulman*, 5 NY3d 122 [2005]; *People v Chapple*, 38 NY2d 112 [1975]). Accordingly, the defendant's statements to Detective Dietrich should not have been suppressed. Fisher, Miller, and Carni, JJ., concur.

Mastro, J.P. (dissenting and voting to affirm the order appealed from, with the following memorandum). I respectfully dissent. The record reveals that the defendant sought in his omnibus motion to suppress inculpatory statements allegedly made by him to a Queens County detective following his earlier arrest and interrogation by Nassau County police, on the ground, inter alia, that the Nassau County police unlawfully had detained him without reasonable suspicion and had arrested him without probable cause. Following the receipt of the prosecution's opposition papers, in which the Queens County District Attorney consented to a hearing to determine the voluntariness of the defendant's statements, and did not address the legality of the defendant's arrest, the Supreme Court, Queens County (Griffin, J.), in an order dated July 9, 2007, directed that a *Huntley* hearing (*see People v Huntley*, 15 NY2d 72 [1965]) be held. The order further provided that "[t]he portion of the motion that requests a hearing on the issue of prob-

able cause is granted to the extent that the issue will be considered by the Court at the suppression hearing granted in this matter."

Notwithstanding the foregoing, the Queens County prosecutor presented absolutely no evidence at the subsequent suppression hearing on the issue of whether the Nassau County police had probable cause to place the defendant under arrest. Rather, the prosecution limited its presentation of evidence to the circumstances surrounding the taking of inculpatory statements from the defendant by a Queens County detective after the arrest and interrogation by the Nassau County police had already occurred. Following the hearing, the defendant sought suppression of the statements on the ground, among others, that the prosecution never satisfied its initial burden of going forward at the hearing with evidence demonstrating the legality of the police conduct in detaining and arresting him. In opposition, the prosecution argued that the hearing evidence was sufficient to support an inference that the arrest was lawful or, in any event, that the interrogation of the defendant by the Queens County detective was so attenuated from any illegality in the defendant's arrest and detention that the taint of the unlawful conduct had dissipated. Alternatively, the prosecution requested leave to reopen the *Dunaway* portion of the hearing (*see Dunaway v New York*, 442 US 200 [1979]) to present evidence regarding the defendant's arrest by the Nassau County police.

In a report dated November 15, 2007, the Judicial Hearing Officer who had presided over the hearing recommended the denial of that branch of the defendant's omnibus motion which was to suppress his statements, but the Supreme Court disagreed. In an order and accompanying decision dated November 19, 2007, the court granted suppression of the defendant's statements, noting that the prosecution had not sustained its initial burden on the issue of probable cause because "the People did not call a single officer who had firsthand knowledge of [the defendant's] apprehension by the Nassau County police," thus leaving the court with "no knowledge of the circumstances which led to the defendant being in the Nassau County interrogation room." Accordingly, the court properly determined that it "cannot conclude that the initial apprehension of the defendant was legal." The court further held that there were no extenuating or extraordinary circumstances to warrant a reopening of the suppression hearing to give the prosecution a second opportunity to present evidence on the probable cause issue. I would affirm.

The Supreme Court properly granted that branch of the

defendant's omnibus motion which was to suppress his statements to the Queens County detective as the fruits of an unlawful arrest. Where, as in this case, the defendant has challenged the legality of his arrest and the court has ordered a hearing on the issue, the prosecution has the burden of going forward with evidence to demonstrate that the police conduct was lawful in the first instance (*see People v Dodt*, 61 NY2d 408, 415 [1984]; *People v Berrios*, 28 NY2d 361, 367 [1971]; *People v Moses*, 32 AD3d 866, 868 [2006]; *People v Thomas*, 291 AD2d 462, 463 [2002]). The prosecution failed to sustain its burden in this case, since it presented no testimony from a witness with firsthand knowledge of the circumstances of the defendant's apprehension (*see People v Gonzalez*, 80 NY2d 883, 885 [1992]; *People v Moses*, 32 AD3d at 868), nor did it present any evidence from which the hearing court properly could have determined that the arrest of the defendant was lawful (*see People v Varlack*, 259 AD2d 392, 393 [1999]; *People v Rojas*, 163 AD2d 1, 2 [1990]). Given this evidentiary shortcoming, we must assume for the purposes of our analysis that the defendant was unlawfully arrested, and that the interrogation which followed the arrest was tainted by that illegality.

Contrary to the contention of the prosecution and the determination reached by the majority, the evidence adduced at the hearing was patently insufficient to establish that the defendant's statements to the Queens County detective were sufficiently attenuated from the taint of his presumptively unlawful arrest and interrogation to render them admissible. "When a defendant challenges the admission of statements he has made, claiming they are the product of an illegal arrest, the burden rests on the People to demonstrate that the statements were acquired by means sufficiently distinguishable from the arrest to be purged of the illegality. That determination requires consideration of the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct" (*People v Conyers*, 68 NY2d 982, 983 [1986]). While our consideration of these factors is necessarily circumscribed by the prosecution's failure to produce a witness at the hearing with firsthand knowledge of the apprehension, detention, and interrogation of the defendant by the Nassau County police, it is nevertheless clear that these factors do not support a finding of attenuation in this case.

With regard to the issue of "temporal proximity of the arrest and the confession" (*id*. at 983), the prosecution and the majority make much of the fact that there was a gap of approximately

11 hours between the defendant's presumptively unlawful arrest and his interrogation by the Queens County detective. However, this purported "gap" is illusory. The hearing evidence demonstrated that the defendant's arrest occurred between 10:15 A.M. and 10:45 A.M., and that the Queens County detective did not begin to interrogate him until 9:10 P.M. However, during this 11-hour interval, the defendant's arrest was processed at the Nassau County precinct and he was placed in an interview room. The testifying detective did not know the extent to which the defendant was interrogated at the precinct. At approximately 1:00 P.M., the defendant was transported to the Nassau County robbery squad, where he arrived between 1:45 P.M. and 2:00 P.M. From 2:00 P.M. to 9:00 P.M., the defendant was continuously interrogated by Nassau County robbery squad detectives regarding a series of robberies in Nassau County. That interrogation ended a mere *10 minutes*, not 11 hours, before the questioning by the Queens County detective, regarding multiple Queens robberies, commenced. Accordingly, the record completely fails to support the conclusion that there was a pronounced temporal break or change in subject matter in the interrogation which was sufficient to dissipate the taint from the prior illegality by allowing the defendant to return "to the status of one who is not under the influence of questioning" (*People v Chapple*, 38 NY2d 112, 115 [1975]).

With regard to the "presence of intervening circumstances" factor (*People v Conyers*, 68 NY2d at 983), I note that while the testifying detective indicated that he administered *Miranda* warnings (*see Miranda v Arizona*, 384 US 436 [1966]) to the defendant and displayed surveillance photos from a Queens robbery to him, these events took place *immediately following* the interrogation by the Nassau County police, concerned offenses similar to those discussed in the interrogation by the Nassau County officers, and occurred in the same physical setting where the defendant had just been questioned for seven hours. Given these circumstances, there is an exceedingly strong probability that the defendant's statements to the Queens County detective were influenced by his unlawful arrest, detention, and interrogation by the Nassau County police. Indeed, neither the administration of *Miranda* warnings nor the exhibition of the surveillance photographs to the defendant by the Queens County detective warrants a contrary finding. While the administration of *Miranda* warnings is an important factor, it is not a conclusive one (*see People v Conyers*, 68 NY2d at 983), and its value is particularly questionable where, as in this case, it immediately follows unlawful police conduct and continuous interrogation (*see People v Chapple*, 38 NY2d at 115). Likewise,

in view of these events, the defendant's admission to the Queens County detective that he was the person in the surveillance photographs is entitled to little weight in evaluating the attenuation issue. Significantly, the poor quality of those photographs did not allow for the independent identification of the perpetrator, nor was the attire of the person depicted therein so unique or unusual as to lead inexorably to the conclusion that the robber and the similarly-attired defendant were one and the same. In short, there were no identifying characteristics in the surveillance photographs which were so damning as to have constituted a pronounced break in the interrogation sufficient to dispel the taint of the presumptively unlawful police conduct which preceded it.

Furthermore, as to "the purpose and flagrancy of the official misconduct" factor (*People v Conyers*, 68 NY2d at 983), I again note that the prosecution failed to present any evidence regarding the circumstances of the apprehension of the defendant by the Nassau County police. That evidentiary shortcoming deprived the hearing court and our Court of testimony from which to determine the degree of flagrancy of any alleged unlawful actions by the police in pursuing, detaining, and arresting the defendant. Since this paucity of evidence is attributable to the prosecution, this factor must militate against the prosecution's position. Accordingly, a consideration of the foregoing mandated factors demonstrates that the prosecution failed to establish that the defendant's statements were sufficiently attenuated from any illegality to render them admissible (*see generally People v Conyers*, 68 NY2d at 983; *People v Gundersen*, 255 AD2d 454 [1998]).

Furthermore, the Supreme Court providently exercised its discretion in denying the prosecution's alternative request to reopen the suppression hearing. Indeed, the prosecution does not have an unlimited right to a reopened hearing where it already has been afforded a full and fair opportunity to present evidence (*see People v Havelka*, 45 NY2d 636, 643 [1978]). Here, the defendant's omnibus motion papers and the Supreme Court's omnibus decision clearly indicated that the issue of probable cause would be litigated at the suppression hearing, and the prosecution was afforded a full and fair opportunity to present evidence regarding that issue at the hearing. The prosecution did not assert the existence of newly-discovered evidence or other extraordinary circumstances sufficient to warrant the reopening of the hearing.

Finally, to the extent that the prosecution now argues that the allegations in the defendant's omnibus motion were insuf-

ficient to warrant a *Dunaway* hearing in the first instance, it need only be noted that the prosecution is not entitled to review of this new contention, which is raised for the first time on appeal.