THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
JOSEPH SAGLIMBENI, Respondent.

First Department, July 21, 1983

**APPEARANCES OF COUNSEL**

*Richard P. Marin* of counsel (*Peter D. Coddington* with
him on the brief; *Mario Merola, District Attorney,* attor-
ney), for appellant.

*Cormac McEnery* of counsel (*Mary J. McDonnell,* attor-
ney), for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

The People appeal from the grant, after a hearing, of
defendant's motion to suppress physical evidence.

The only witness at the suppression hearing was the
arresting officer, Edward Hart, of the Auto Crime Division
of the New York City Police Department. On January 13,
1982 Officer Hart and Detective Melan pursued a report
from an insurance investigator that he believed he had
seen a trailer reported stolen six months previously in
Pennsylvania on the lot of "City Island Collision", an auto
body shop. The investigator believed it to be the same

trailer because it had pictures of a Model T Ford on its sides. When the officers reached the lot at about 2:00 P.M., after having first met with the insurance investigator on City Island, they saw a trailer which met the investigator's description. It had no license plates, and the vehicle identification plate had apparently been removed from the left side.

The officers decided to inquire further, and entered the work area of the body shop itself. There, toward the rear, Officer Hart saw someone covered by a blanket, sitting on a paint can. When Officer Hart identified himself, the individual, defendant, removed the blanket from his head. As he did so Officer Hart could see that he had been speaking into a New York Telephone Company pay phone which was sitting on the floor, unattached, except for wires running to the wall. The phone did not contain the standard coin box. Defendant was immediately arrested for theft of services and given the *Miranda* warnings.

Officer Hart inquired about the trailer. Defendant said it was his. Asked to produce the ownership documents defendant walked to a safe, opened it, and began looking through some papers. In the opened safe Officer Hart saw four boxes of bullets. He asked where the gun was. Defendant said he had no gun. The officers looked in the immediate area for a place where a gun could be secreted, but saw none. Defendant then produced the registration for the trailer. Again Officer Hart asked defendant as to the whereabouts of the gun, and again defendant replied that he had no gun. Officer Hart then asked what was behind the overhead door in the back of the shop, about five feet from the safe, and defendant said "tools and equipment". When Officer Hart asked "Are you sure the gun is not in there?", defendant lifted up the door and said "No, you can look for yourself."

Officer Hart followed defendant into the back room. Against the wall, facing the front of the building was another safe, already opened. Defendant walked over to it and began pulling out the drawers, telling Hart, "You can look for yourself; there is no gun here." As Officer Hart, at defendant's bidding, approached the safe, defendant turned around and threw a paper bag back into the other room,

the work area into which the officers had originally entered. The bag landed with such force that Officer Hart assumed that it contained a gun. He immediately retrieved the bag and found three bombs inside. He then rearrested defendant and charged him with possession of a deadly weapon.

At the conclusion of the hearing the court, apparently crediting Officer Hart's testimony, nevertheless suppressed the three bombs solely because it believed the officers lacked probable cause to conduct a search of the back room. Since we find that the officers' conduct was reasonable throughout and that the recovery of the bombs was not the product of an illegal search and seizure, but rather of a consensual search, we reverse and deny suppression.

Following up a report from an insurance investigator that a stolen trailer was on the property of "City Island Collision", the two officers proceeded to the auto body shop and saw a trailer on the lot matching the description of the stolen trailer. Additionally, they noticed that the trailer had no license plates and that, apparently, the vehicle identification plate had been removed. Under these circumstances the officers had the right, indeed the duty, to enter the shop and inquire as to the ownership of the trailer. Receiving no answer to their knock they entered the shop, a business premises, clearly marked as such, during regular business hours, and announced their presence. By entering the shop the officers did and saw no more than an ordinary customer would. "What a person knowingly exposes to the public * * * is not a subject of Fourth Amendment protection." (*Katz v United States,* 389 US 347, 351, citing cases; see, also, *Lo-Ji Sales v New York,* 442 US 319, 329.) A police officer has the same right as any other citizen to enter a garage open to the public and to make a plain view discovery. (*People v Ciardullo,* 74 AD2d 580.)

Upon entering the shop the officers' observations of defendant cowering under a blanket and speaking into a hijacked telephone stripped of its cash box, provided reasonable cause to believe that a crime, i.e., theft of services (Penal Law, § 165.15, subd 4), was being committed in

their presence, and afforded a basis upon which to arrest (CPL 140.10, subd 1, par [a]). The officers continued with what must be considered appropriate police activity when, after giving defendant the *Miranda* warnings, Officer Hart inquired about the status of the trailer and followed him to the safe where defendant claimed the trailer registration was kept. Since defendant was an arrestee the officer had a right to remain literally at his elbow at all times. (See *Washington v Chrisman,* 455 US 1.)

In its ruling the suppression court implicitly approved of the officers' conduct up to this point. In fact, during argument, the court commented that until the inquiry about the back room the officers had exhibited "good police procedure". But, as already noted, it found the seizure of the bombs to be the tainted product of an illegal search of the back room. In our view, this finding was erroneous since it ignored completely the uncontradicted testimony of Officer Hart that the officers' ensuing entry into the back room to look for a gun was at defendant's express invitation. Defendant's consent thus rendered the question of probable cause academic.

A search without a warrant is lawful only if incident to a lawful arrest. (See *Henry v United States,* 361 US 98, 102; also, *Chimel v California,* 395 US 752; *People v Williams,* 37 NY2d 206.) Thus, the earlier arrest of defendant for theft of services would not justify a search of the back room since "a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." (*Stoner v California,* 376 US 483, 486; see *Chimel v California,* 395 US 752, *supra.*) Nor would the viewing of four boxes of bullets justify the search, although it did provide a basis for inquiry as to the whereabouts of any gun. (See *People v Henix,* 59 AD2d 593, 594.)

A search without a warrant and in the absence of probable cause is valid, however, if based upon consent freely and voluntarily given. (*Schneckloth v Bustamonte,* 412 US 218; *People v Whitehurst,* 25 NY2d 389.) "Consent to search is voluntary when it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with official coercion, actual

or implicit, overt or subtle". (*People v Gonzalez,* 39 NY2d 122, 128.) Of course, since consent constitutes a waiver of a constitutional right, the People have a heavy burden in showing the voluntariness of that consent. (*People v Kuhn,* 33 NY2d 203, 208; *People v Whitehurst,* 25 NY2d, at p 391.)

Although it was ignored by the suppression court we may consider the evidence bearing on consent and make the appropriate finding. (*People v Casado,* 83 AD2d 385, 387.) Based on our review of the evidence we find that the People have met their burden in showing that defendant voluntarily consented to a search of the back room. The *Miranda* warnings had been properly administered, defendant was not in handcuffs, and no threats or promises were made. Certainly, if after the bullets were discovered and he was asked about a gun defendant had merely responded "there is no gun", the officer would not have been justified in entering the back room or conducting a general search of the entire premises. But, instead, defendant stated that he had no gun and that the officer could look for himself. Indeed, defendant repeated the invitation to "look for yourself" as he led the officers into the back room and to the second safe. In *People v Meredith* (49 NY2d 1038) a similar unsolicited invitation — "You can check if you want" — was held to constitute a voluntary consent to a police search. Although defendant was under arrest, that circumstance alone is insufficient to infer a coerced consent to a search. (*United States v Watson,* 423 US 411, 424; *People v Gonzalez,* 39 NY2d 122, *supra.*)

Furthermore, we note that defendant himself lifted the overhead door to the back room, and he, not the officers, pulled out the drawers to the back room safe. Where a defendant participates in a search, the search is more likely the result of consent. (*United States v Smith,* 308 F2d 657, cert den 372 US 906.)

We are not obliged to speculate as to defendant's reasons for permitting the search. Since a gun was never found, perhaps he was momentarily forgetful that he had stored bombs in the back room safe and genuinely believed that a search would be fruitless. Regardless, when the paper bag landed with such a thud as to indicate that it might contain a gun, Officer Hart was justified in seizing the bag and

examining its contents, particularly in view of all that had transpired previously. To do less would have been a dereliction of duty. Officer Hart had a right not only to see whether the bag contained a gun but to assure himself that he and Detective Melan could safely remain on the premises; "[o]therwise, [their] safety might well be endangered, and the arrest itself frustrated." (*Chimel v California,* 395 US, at p 763.) Finally, we note that the scope of the intrusion — recovering the bag and examining its contents — was minimal.

Accordingly, the order, Supreme Court, Bronx County (ARCHIE GORFINKEL, J.), entered October 20, 1982, granting defendant's motion to suppress physical evidence, should be reversed, on the law and the facts, and the motion denied.

MILONAS, J. (dissenting). In my opinion, the order being appealed herein should be affirmed.

The defendant was indicted on March 8, 1982 for the crimes of criminal possession of a weapon in the third degree and criminal possession of stolen property in the second degree as the result of an incident which occurred on January 13, 1982. At approximately 2:00 P.M., Police Officer Edward Hart and his partner, Detective Melan, arrived at 217 Fordham Street on City Island in The Bronx in response to a report concerning a stolen trailer. Located at this address is an auto body shop owned by the defendant. On the establishment's lot, just beyond the paved sidewalk, the officers observed a trailer which matched the description of the stolen vehicle. After examining the trailer, Officer Hart ascertained that the license plates were missing and that the identification plate had been removed. The trailer, which was parked and unattached to a tow vehicle, could not be moved due to a heavy snow accumulation. Officer Hart thereupon decided to investigate further.

The front door of the body shop was closed. A side door, situated some 35 to 40 feet from the trailer, was also closed but unlocked. Officer Hart knocked and, receiving no answer, pulled the door open and proceeded inside. Immediately upon entering, he noticed the defendant, who was sitting on a paint can in the rear of the room. The defen-

dant was wrapped in a blanket which covered his head, and he was talking into a standard pay telephone box. The telephone was resting on the floor and was connected by wires from the back of the instrument to the wall. It was missing a cash box. Officer Hart informed the defendant that he was under arrest for theft of services and advised him of his *Miranda* rights. When the officer questioned him about the trailer, the defendant claimed to own it. The defendant then walked over to a wall safe, purportedly to fetch the registration for the vehicle. According to Officer Hart, when the defendant opened the safe, inside in plain view were four boxes of bullets.

The officer asked for the whereabouts of the gun, and defendant denied having one. Officer Hart asserted that he "looked in the immediate area for a place where a gun could be secreted and I satisfied myself that there wasn't a gun right there. At that time he produced, he handed me the registration, and I asked him again where the gun was. I was a little insistent about it, and again he stated to me there is no gun in the place." In the course of his examination of the vicinity, Officer Hart spotted an overhead door some five feet from the safe. The defendant explained that he stored his tools and equipment in there. The officer inquired as to whether the defendant was certain that the gun was not inside, and the defendant replied, "No, you can look for yourself". The defendant opened the door, and the two men entered into a back room where there was another safe. After having directed the officer to the safe, the defendant turned around and tossed a paper bag back into the other room. The bag landed with a heavy thud. Officer Hart, presuming it to contain a gun, retrieved the bag and discovered three bombs inside.

The hearing court, in a determination announced from the Bench, granted the motion to suppress "all property seized in those premises subsequent to the officer entering into a back room of those premises." In its view, the police lacked probable cause to conduct a search of the back room. The People herein appeal from that ruling. Although the defendant argues that the search of the trailer and the entry and search of his premises were also unlawful, the defendant has not cross-appealed from that portion of the

hearing court's decision which was adverse to him. Consequently, this opinion will only concern itself with whether the court properly suppressed the three bombs.

Assuming that Officer Hart's entry into the auto body shop was authorized, then the officer validly placed the defendant under arrest for theft of services. Having provided the defendant with his *Miranda* warnings, it was appropriate for Officer Hart to question him about the allegedly stolen trailer and the tampered pay telephone. It will also be assumed here that the defendant voluntarily opened the safe in order to procure the registration for the vehicle and that the boxes of bullets were inside in plain view. Since the record in this case does not contain an adequate fact finding, the foregoing sequence of events can only be implied from the hearing court's ultimate decision to suppress only the property seized after the officer went into the back room. Thus, the instant analysis has now reached the point where Officer Hart noticed the bullets and, accordingly, inquired into the existence of a gun. Defendant, who was now under arrest, denied possessing a gun. Whereas the defendant was alone, Officer Hart was accompanied by another police officer. There was no indication that the defendant was armed or that the police officers were in any physical danger. The mere presence of bullets certainly does not constitute the exigent circumstances necessary to support a warrantless search, and, indeed, the People do not assert such a theory. (See *Mincey v Arizona,* 437 US 385; *McDonald v United States,* 335 US 451; *People v Adams,* 53 NY2d 1.)

The People argue instead that the defendant consented to Officer Hart's entrance into the back room. The hearing court's determination, as well as the evidence introduced at the suppression hearing, belie that contention. Officer Hart repeatedly asked the defendant whether he had a gun and, in fact, badgered him on the subject. The defendant's declaration that "you can look for yourself" does not mean that the officer was given license to conduct a full-scale search for the purported weapon. While it is true that a warrantless search is proper when it is based upon a valid consent (*Schneckloth v Bustamonte,* 412 US 218; *People v Adams, supra*), the prosecution has clearly failed to meet

its "heavy burden of proving the voluntariness" of the alleged consent. (*People v Gonzalez,* 39 NY2d 122, 128.) Moreover, defendant's conduct in the back room did not "attenuate the taint", as claimed by the People. What occurred at this time was brief and spontaneous and the direct result of the officer's impermissible entry into the back room. In that connection, *People v Boodle* (47 NY2d 398) is distinguishable. Consequently, the order of the Supreme Court, Bronx County, should be affirmed.

SANDLER, J. P., and SILVERMAN, J., concur with SULLIVAN, J.; MILONAS and FEIN, JJ., dissent in an opinion by MILONAS, J.

Order, Supreme Court, Bronx County, entered on October 20, 1982, reversed, on the law and the facts, and the motion denied.