■ The People of the State of New York, Respondent, v Russell Void, Appellant.—Judgment of Supreme Court, Bronx County (Irene Duffy, J., at plea and sentence; John Collins, J., on motion to suppress), rendered February 9, 1989, by which the defendant was convicted. Upon his plea of guilty, of criminal possession of a controlled substance in the second degree and sentenced to an indeterminate term of three years to life in prison, is reversed and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused, pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Defendant pleaded guilty after the trial court (John Collins, J.), denied his motion to suppress the physical evidence found by the arresting officers. The uniformed officers testified that on August 31, 1987 at 10:40 P.M. they received a radio transmission of an anonymous tip that a shot had been fired at apartment 7E, 26 Metropolitan Oval. The officers knocked on the door and identified themselves as police officers. According to the officers the peephole opened, but the door did not, and consequently they continued to knock on the door and identify themselves for approximately two minutes. During that time

the officers heard footsteps inside the apartment and then the defendant opened the door.

Defendant was described by the officers as being half dressed and rubbing his eye as if he had been asleep. The officers explained to the defendant that they were there to investigate a report that shots were fired and asked if they could enter the apartment to look inside to see if anyone was hurt. The officers stated that the defendant responded that he did not care if they entered since it was not his apartment. The officers saw defendant's codefendant, Shields, lying on a couch which was directly in front of them. One of the officers entered the kitchen and saw three plastic bags in the sink. One of the bags contained slightly over five ounces of powdered cocaine and the other two contained a total of 596 vials of crack. Both defendant and Shields were handcuffed with their hands behind their backs. The officers stated that they then looked out of the apartment window to see if any contraband had been thrown out. When they turned around they saw the defendant with his hands still cuffed behind his back reaching under the couch. When the officers moved the couch they discovered a pistol and an unzipped suitcase containing $32,226.

According to the defendant, Shields woke him up because there were police officers knocking at the door. Defendant stated that after the police officers told him that they were there to investigate a report that shots had been fired, he told them that no shots had been fired in the apartment and that maybe the shots came from a neighbor's apartment down the hall. The officers then pushed their way into the apartment and asked if they could look around. Defendant stated that he did not consent and in fact asked the officers if they had a warrant. The defendant maintained that the officers conducted a search of the apartment anyway, commanding defendant and Shields to lie face down on the floor while they searched. According to the defendant the officers moved furniture around and found the gun under the couch but found the drugs in the bathroom hamper and the money in a suitcase in the headboard of the bed.

It is still the rule that " '[t]hough a defendant who challenges the legality of a search and seizure has the burden of proving illegality, the People are nevertheless put to "the burden of *going forward* to show the legality of the police conduct in the first instance *(People v. Malinsky,* 15 N Y 2d 86, 91, n. 2)" *(People v. Whitehurst,* 25 N Y 2d 389, 391

[emphasis in original]). These considerations require that the People show that the search was made pursuant to a valid warrant, consent [or] incident to a lawful arrest * * *' *(People v Berrios,* 28 NY2d 361, 367-368.) Implicit in this concept is that the testimony offered by the People in first presenting their case must be credible" *(People v Quinones,* 61 AD2d 765, 765-766).

The People in this case urge this court to accept that the defendant consented to a police search of the apartment, where a substantial amount of cocaine was stored in plain view in the kitchen sink—a location where the drugs could be readily discovered and, what is even more curious, damaged by moisture. There is no testimony in this case that the defendants were engaged in the processing or packaging of the drugs and thus nothing that would explain why the drugs were out in plain view. These facts cast doubt upon the police testimony, especially when the officers' testimony that they knocked at the door for approximately two minutes, during which time they heard footsteps inside the apartment, is considered. It seems odd that the defendants would take the time to hide a weapon and a suitcase full of money and would then leave a substantial amount of cocaine in plain view. We are also asked to believe that after discovering the drugs and handcuffing the defendants, both officers took their eyes off of the defendants to look out of the window to see if any contraband was thrown out, only to turn around and discover the defendant reaching under the couch, presumably to reach for the gun, while his hands were cuffed behind his back. The officers' testimony has all of the indicia of a story tailored to take advantage of the emergency doctrine enunciated in *People v Mitchell* (39 NY2d 173, 177-178, *cert denied* 426 US 953). The unpublished decision and order of this court entered herein on January 17, 1991 is hereby recalled and vacated. Concur—Sullivan, Ross, Ellerin and Rubin, JJ. Kupferman J. P., dissents and would affirm.