■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CELESTE FLORES, Appellant.—Judgment, Supreme Court, Bronx County (David Stadtmauer, J.), rendered June 13, 1989, convicting defendant, upon her plea of guilty, of criminal possession of a controlled substance in the second degree, and sentencing her to an indeterminate term of imprisonment of 3 years to life, unanimously reversed, on the law and on the facts, the defendant's motion to suppress the evidence is granted, the plea is vacated, and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of a copy of this Court's order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

On March 3, 1987, Police Officer Terence Byrne was assigned as part of a back-up team to a "buy and bust" operation on the second floor apartment of 1360 Nelson Avenue in the Bronx. As Officer Byrne watched the front of the building he observed about ten people enter and leave a walk-in apartment unrelated to the buy and bust operation. After assisting in the arrest of the suspects on the second floor, Officer Byrne and at least two other police officers decided to investigate the walk-in apartment to determine whether drugs were being sold therein. At this point, the testimony of Officer Byrne and that given by the defendant at the motion to suppress diverged in several material respects.

According to Officer Byrne, he knocked hard on the door several times, while announcing "police", and after a few moments the defendant opened the door. He asked the defendant if she lived there, and she said "No, I live in Manhattan." When asked who did live there, the defendant replied that she didn't know. Officer Byrne then asked if he and the other officers could enter the apartment, and she said yes, opened the door further, and waved the police inside. The officers then walked through the apartment without opening

any cabinets or drawers, and observed on top of the kitchen stove a scale, two strainers and a mortar and pestle. On top of the scale were two tinfoil packets of white powder, which later tested negative for drugs. The defendant was placed under arrest on the basis of what the police then believed to be cocaine in the foil packets. A strip search of the defendant at the police station revealed five plastic bags containing cocaine and over $800 in cash that the defendant had hidden in her underwear.

According to the defendant, when she heard loud knocking at her door, and the announcement "police", she became frightened and began collecting the drugs and cash which she placed in her underwear, a process that took approximately 15 minutes, possibly longer, during which time the police continued pounding on her door. When she finally opened the door, seven or eight police officers pushed their way past her, without asking where she lived or for permission to enter. The police proceeded to open closets and drawers, and looked under matresses and furniture in the bedroom without finding anything. The police then opened the oven and found the scale (and presumably the tinfoil packets) inside.

The court denied defendant's motion to suppress the bags of cocaine found in her underwear, finding that defendant's hand motion was reasonably construed by the police as an invitation to enter her apartment, and that the scale and tinfoil packets containing powder were observed by the police in plain view. For reasons that follow, we reverse those findings and grant the motion to suppress.

The first issue we address concerns the voluntariness of the defendant's alleged consent to enter her apartment. This issue is divided into two sub-issues, both of which should have been resolved in favor of the defendant. First, the hearing court found on the facts that after defendant denied living in the apartment, the police asked "Can we come in?" and that the defendant made a hand motion inviting their entry. Even if we were to accept this finding, an invitation to enter a dwelling, presumably to answer questions or to find out what the police wanted to inquire about, cannot reasonably be construed as a broad consent for the police to wander at will throughout the entire dwelling, which is what Officer Byrne testified took place. On this ground alone, the motion to suppress should have been granted.

Second, "[c]onsent to search is voluntary when it is a true act of the will, an unequivocal product of an essentially free and unconstrained choice. Voluntariness is incompatible with

official coercion, actual or implicit, overt or subtle" *(People v Gonzalez,* 39 NY2d 122, 128). We find that under all the circumstances, including the fact that this was the defendant's first arrest, the officers' hard pounding on her door, repeated over a period of at least several minutes when the defendant did not respond, and the failure to advise the Spanish-speaking defendant that she had the right to refuse entry, constituted at least "implicit" or "subtle" coercion. We thus conclude that the People did not meet their "heavy burden of proving the voluntariness of the purported consent[]" *(People v Gonzalez, supra,* at 128; *see, People v Laverne,* 14 NY2d 304, 307).

Finally, we find on the facts that the search was conducted as described by the defendant, and that the scale and tinfoil packets containing powder were discovered in the oven. The testimony of Officer Byrne that the defendant left the scale and tinfoil packets in plain view prior to her voluntarily admitting at least three and possibly more police officers into her apartment, has the indicia of a story tailored to overcome constitutional objections to what otherwise would be a clearly illegal search *(People v Void,* 170 AD2d 239). In view of these findings, we need not address the defendant's alternative argument that the police should not have entered the apartment, even with the defendant's consent, because she had told them prior to giving her purported consent that she did not live there, and thus the police should not have presumed that she had the authority to consent to their entry and search. Concur—Carro, J. P., Wallach, Kassal and Rubin, JJ.