OPINION OF THE COURT
Joseph Fisch, J.
The defendant, charged with criminal possession of a *391 weapon in the third degree, moved to suppress the gun seized from his person as the fruit of an unlawful arrest. A Mapp hearing was held and upon the evidence adduced at said hearing, and a viewing of the crime scene, defendant’s motion is denied.
FINDINGS OF FACT
The People called one witness: Police Officer Richard Lap. The defense called no witnesses. The court finds the testimony of the People’s witness credible.
On May 31, 1993, Officer Lap and his partner Police Officer Robert Kish were on uniformed radio motor patrol. Officer Lap was the recorder while Kish drove. It was a rainy and very windy evening. At approximately 11:21 p.m., as the officers drove south on Brown Place to 137th Street, a residential area with a "very high crime rate”, Lap saw the defendant some 15 to 20 feet away, walking up Brown Place toward 137th Street with two other individuals. The area was well lit by streetlights. The defendant, who was wearing an open blue windbreaker jacket, pulled his hood up and appeared to zipper the jacket. This movement, combined with the wind, caused the jacket to "ride up” revealing the butt of a black gun which protruded from the small of defendant’s back. Lap tapped his partner, saying, "Bob, Bob, gun. He’s got a gun”. The officers immediately pulled up in front of the three men and exited their vehicle with their guns drawn. Kish covered the two other individuals while Lap approached defendant saying "Police”. Lap patted defendant down, removing and securing the gun, then placed him under arrest. The weapon was a black semiautomatic, 9 millimeter Glock, about IVi inches long, loaded with approximately 16 live rounds.
The defense proffered as defense exhibit A the blue windbreaker jacket defendant wore the night he was arrested. The defendant demonstrated raising the hood and zippering the jacket which reached below his waist, in an effort to establish that Lap could not have seen the gun as he testified. Lap stated the windbreaker "rode up” higher and above the waist the night of the arrest because of the wind.
The court adjourned the hearing, directing the production of the weapon for the court’s examination. Following examination of the weapon on the adjourned date, the court advised the parties that it wished to visit the scene during darkness hours.
*392 THE RESPONSIBILITY AND ROLE OF THE COURT
The trial court is the trier of fact in a suppression hearing. Such hearing is the critical proceeding in a case where a defendant is charged with unlawful possession of narcotics, a weapon or other contraband. If the court finds the seizure of such contraband unreasonable under the Fourth Amendment and/or the State Constitution, the evidence is suppressed and the prosecution is, in most cases, terminated and the case dismissed. The determination of the reasonableness of a search and seizure is a mixed question of law and fact. The determination of the suppression court is accorded great weight. (See, People v Prochilo, 41 NY2d 759 [1977]; People v Pratt, 207 AD2d 671 [1st Dept 1994].) Although the defense bears the burden of proof, the People must go forward in the first instance to show that the police conduct was lawful. (People v Berrios, 28 NY2d 361, 367-368 [1971].) The People must adduce credible evidence in support of their prima facie case. (People v Void, 170 AD2d 239 [1st Dept 1991]; People v Quinones, 61 AD2d 765 [1st Dept 1978].)
According to the People, the defendant was arrested when a police officer observed a gun protruding from the small of his back after the wind fortuitously raised his waist-length jacket. The People adduced the officer’s uncontradicted testimony, but the defense argued that the incident the officer described was a physical impossibility and the court therefore should reject his testimony as incredible.
The role of the court at this juncture is to determine key facts. Did the lighting, distance, wind and view on the date in question enable the officer to have observed from the described vantage point a gun the size of the weapon seized protruding from the small of defendant’s back?
Resolution of these factual issues is essential to the continued prosecution of this case. If the officer’s testimony is discredited, the court must suppress the gun. If the People are thus precluded from: introducing the gun into evidence, the indictment against the defendant necessarily fails.
At the suppression hearing, the People adduced only the officer’s uncontradicted testimony. They did not produce the gun, until so directed by the court. No other evidence relevant to the issue of physical possibility or impossibility was introduced.
Although the defendant has the burden of proof at a sup *393 pression hearing, he did not take the stand and swear to a different version of the incident. For example, the defendant did not testify that the police officer approached him, lifted his jacket and searched him.[1] He did not adduce evidence to show the view was obstructed or the weather conditions other than as described by the officer. No information or evidence regarding weather was introduced by the defense to disprove the officer’s testimony that the night in question was very windy and rainy.
This court intervened with its own investigation. A court is responsible "for safeguarding both the rights of the accused and interests of the public in the administration of criminal justice”. The adversary nature of the proceedings does not relieve the court of its obligation to raise, sua sponte, matters which promote a just determination. (See, American Bar Association Standards: Special Functions of Trial Judge, Standard 6-1.1 [2d ed 1980].)
Accordingly, the court directed the People to produce the gun, a large, bulky weapon, IVi inches in length. The size of the weapon supported the officer’s testimony that it could be observed from the distance involved. The court then initiated a visit to the scene at 9:00 p.m. one evening. Upon arrival, the parties conceded the physical condition of the street was unchanged since the arrest date.
The defendant assumed the position where the officer said he had observed him, while the court stood in the place of the arresting officer. No foliage or obstruction obscured the view from that vantage point. The court observed the street was narrow and well lighted.
Although defendant’s jacket did not "ride up” at this on-the- *394 scene demonstration, that fact is not dispositive. While the court’s investigation established that the physical and lighting conditions on the street and the size and shape of the gun were accurately described at the hearing, the environmental factors, the strong winds and rain could not be replicated. Neither party introduced documentary evidence of the weather on that date. Accordingly, the court contacted the National Climatic Data Center, a division of the National Oceanic and Atmospheric Administration of the United States Department of Commerce, located in Asheville, North Carolina. Information from this agency revealed that between 11:00 p.m. and midnight in the New York City area on the day in question, the rainfall was approximately 1.37 inches and the wind peaked at 33 miles per hour.[2] Although both parties had rested, this court reopened the hearing to admit a certified copy of the Center’s report, admissible as a public document (CPLR 4540) copies of which were given to the parties. In light of these documented weather conditions, the court’s examination of the weapon and the court’s personal examination of the scene, the court finds the officer’s testimony credible. Such finding is additionally confirmed by the common human experience of walking down a street on a windy day and having one’s open outer garment, such as a jacket, blown up, as well as having umbrellas turned inside out by a gust of wind.
CONCLUSIONS OF LAW
A suppression court must discredit testimony if it is patently false. " ' "[Testimony which is incredible and unbelievable, that is, impossible of belief because it is manifestly untrue, physically impossible, contrary to experience, or self-contradictory, is to be disregarded as being without evidentiary value, even though it is not contradicted by other testimony or evidence introduced in the case.” ’ ” (People v Miret-Gonzalez, 159 AD2d 647, 649 [2d Dept 1990], Iv denied 76 NY2d 739 [1990].) Suppression courts have sometimes been chided by appellate courts for sanguine acceptance of police testimony which, tailored to overcome constitutional objections, defies common sense and/or the law of physics. See, e.g., People v Garafolo (44 AD2d 86, 88 [2d Dept 1974] [a prosecution for violations of the cigarette tax laws]), where the officer *395 testified at the suppression hearing that he arrested the defendant after he saw a North Carolina decal on the bottom of a cigarette package inside a carton, which itself was inside a brown paper bag. The Appellate Division, Second Department, reversed the order denying suppression, because that testimony was a "tall tale”, though that Court deemed the defendant’s claim of innocent possession a tale "almost as tall as [the officer’s]”. (Supra, at 88.) Similarly, in People v Castro (NYLJ, June 16, 1993, at 26, col 5), the defense argued that this court should suppress drugs seized after the police officers’ warrantless entry into an apartment. One officer had testified at the hearing that while standing in the hallway outside of the apartment, through the "completely and fully” opened door, he could see defendant Cueto, the apartment hallway and the apartment kitchen to the left. The door in question opened to the left, into the apartment. The purported justification for their warrantless entry was that the officer was allegedly able to observe from that vantage point the kitchen table on which there was in plain view a double-beam triple-balance scale, a wire mesh screen, and glass rod all of which he recognized as drug paraphernalia. The defense contended that a structural wall obstructed this vantage point completely. In support of this claim, counsel adduced the testimony of an investigator, and introduced a videotape into evidence. The People challenged the accuracy of the videotape and introduced photographs purportedly rebutting the defense contention. To resolve this issue, this court, accompanied by the parties, visited the scene. Standing in the same position where the officer had stood I ascertained that the defense contention was correct. I personally observed the apartment door could not be fully opened because it was blocked by the structural wall. Once opened, it completely blocked any observation into the kitchen. The officer had sworn he made an observation that was physically impossible. Accordingly, I suppressed the evidence because the testimony of the officer was not truthful.
At the hearing, in the case at bar, the People adduced the arresting officer’s testimony that the wind blew up the defendant’s jacket to expose the butt of the gun. Defense counsel argued that the demonstration would show that the officer had testified to a physical impossibility. My investigation established that this contention was incorrect.
The New York Court of Appeals has noted that demonstrative evidence, "when validly and carefully used”, is no less *396 probative than a witness’ testimony relating past events because "Judges and juries can themselves form perceptions through the direct use of their own senses”. (People v Acevedo, 40 NY2d 701, 704 [1976].) However, while demonstrative evidence is admissible in the court’s discretion, variations between the demonstration and the original event must be carefully weighed. (Supra.) The circumstances of the original event must be compared with the conditions in the demonstration. Any variation affects the weight accorded demonstrative evidence although it does not require exclusion. See, e.g., People v Mariner (147 AD2d 659 [2d Dept 1989], Iv denied 74 NY2d 666 [1989]), where the Appellate Division, Second Department, ruled that the suppression court could properly view through binoculars at a distance of 40 feet pieces of paper cut to the size of glossine envelopes to ascertain if the officer could have made the observation he claimed. (Cf., People v Santiago, 197 AD2d 756, 757 [3d Dept 1993], Iv denied 83 NY2d 876 [1994], holding that the trial court properly refused to grant a defense request for a jury visit to the scene of the arson of an automobile, because under the circumstances, any recreation of the original events would be implausible.)
Although neither rain nor wind were present at the time of the court-initiated visit to the scene, the official weather records reporting rain and peak winds of 33 miles per hour support the court’s finding that the officer testified truthfully that a gust of wind blew the defendant’s jacket up to reveal the gun. All other environmental conditions, as described by the officer, were confirmed by the crime scene visit.
As noted supra, the defense did not contradict the officer’s testimony with either his own sworn testimony or that of other witnesses. This failure to meet his burden of proving the police conduct illegal would have justified denial of the suppression motion. However, I remained troubled by the fortuitous happenstance that a gust of wind sufficient to blow the defendant’s jacket up to reveal the gun occurred just as the officer approached. Accordingly, I chose to conduct further inquiry. If the records from the weather bureau had revealed that the night of the incident was calm and still, I would have suppressed the evidence, even in the absence of a defense case and its failure to meet its burden of proof. (See, People v Garafolo, 44 AD2d 86, supra.)
One final note. We who labor in the forest known as the criminal justice system are confronted daily with the task of *397 judging the credibility of police officers. Few have not been troubled by police testimony obviously tailored or patently false. Occasionally such testimony is deemed incredible on its face, either on the People’s direct examination or more likely, through defense cross-examination. In People v Ebanks (NYLJ, Aug. 22, 1994, at 29, col 4), the officer’s testimony was so evasive and contradictory and his manner so nervous that I asked whether he had ever testified in a court before and whether he wished to change or correct any portion of his testimony. Upon completion of his testimony, I hastened to grant the motion to suppress, dispensing with superfluous oral argument. In other cases, resolution of credibility is difficult if not impossible without a visit to the crime scene. As noted in People v Castro (supra), such a visit disclosed that the officer testified to a physical impossibility.
For too long police officers have been evaluated by the traditional standard of "numbers”, i.e., the quantity of arrests made. This court is aware of no institutionalized examination by police command, contemporary or retrospective, of the quality of police arrests and action. This is a major failure. It should be a requirement of police commanders to inquire into the circumstances of every suppression of evidence by a court based upon incredible testimony of line officers.
We in the judiciary can do more as well. Police officers should not mistake the judiciary’s shared concern for public safety with a willingness to ignore evisceration of oaths sworn before us or to accept questionable police action as a necessary means to fight and reduce crime. Judges should exploit every opportunity to attempt to ensure a more scrupulous adherence to accuracy on the part of police witnesses. It appears to this court that increased judicial involvement, including crime scene visitations where appropriate, may inhibit or reduce the frequency of false police testimony.

. The omission of any testimony by the defendant or any other witness may well have been an appropriate decision on defense counsel’s part, in light of his ethical obligation as a member of the Bar and officer of the court. However, this omission in the context of a suppression hearing is critical. The case of People v Martinez (Sup Ct, Bronx County, Sept. 9, 1994, Hinkson, J., indictment No. 938/94), cited by counsel to the court when this decision was rendered, is completely inapposite. In that case, the police officer claimed that on street patrol he encountered the defendant, with a group of 10 or 15 young men. It was conceded that none of these young men appeared to be engaged in any criminal activity. The officer in Martinez (supra) swore that when the officers approached, shields displayed, identifying themselves as police officers, the defendant, of his own volition, lifted his jacket to display a gun. This assertion was contradicted by three of the young men in that group, who testified they were arbitrarily searched by police. There were other unbelievable aspects of the officer’s account in Martinez (supra), in marked contradistinction to the case at bar.

. The actual report noted the wind velocity in knots, with an accompanying conversion formula for miles.