*711 OPINION OF THE COURT
Leon Ruchelsman, J.
Defendants are charged with criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03). Defendants now move to suppress the drugs and drug vials found during a search on the grounds that the consent to search was invalid and that in any event the officers exceeded the scope of the consent. A hearing was held before this court and Police Officer Dragonetti testified for the People and defendant Bedeau testified for the defense. This court finds their testimonies credible to the extent indicated.
FINDINGS OF FACT
On September 23,1995 at approximately 8:00 p.m., Officer Dragonetti and a few other plainclothes officers from the anti-crime unit entered an apartment building located at 2935 West 33 Street in Kings County. There had been numerous complaints regarding the violence and drug trafficking taking place in that building and Dragonetti was responding to these complaints. In fact, this building had been the subject of a search warrant that Dragonetti had executed a few weeks beforehand.
Specifically, the warrant had been issued for apartment 7B, leased to a Robert Lomack based on legally sufficient information that drugs were being sold there. At that time Dragonetti met Lomack who stated that there were no drugs being sold out of his apartment and rarely spent any time there and that anyone in his apartment was there without permission.
Based on these previous dealings with Lomack, Dragonetti then knocked on apartment 7B and a male voice from inside the apartment inquired as to who was there. Dragonetti responded that he was a friend named "Mike”, however, the male refused to open the door. Thereupon, Dragonetti identified himself as a police officer. This prompted the individual to cease all conversation with Dragonetti. Dragonetti then proceeded to leave the floor when he met Lomack exiting the elevator. Dragonetti related to Lomack what had just occurred outside his apartment. Lomack then reassured Dragonetti that he would open the door and allow the officers to enter.
Once inside Dragonetti noticed two males sitting at the kitchen table eating sandwiches and watching television. Dragonetti asked the men at the table why they had refused him entry and they responded that they did not know anyone named "Mike”.
*712 Dragonetti asked Lomack if he could look around the apartment and Lomack consented. Dragonetti began rummaging through sandwich wax paper located on the kitchen table. Beneath some of the paper Dragonetti observed four vials of what appeared and was subsequently determined to be crack cocaine. Lomack told the officers the vials were not his and had no knowledge of them. The two individuals were then placed under arrest. Pursuant to a search incident to an arrest of defendant Bedeau, Dragonetti recovered 11 vials located in defendants’ socks and pockets.
A. Officers Presence In The Building
This court finds that the officers had authority to be inside the apartment building. It is well settled that without a search warrant police officers may not enter any premises or other area where the defendant maintains a reasonable expectation of privacy (Katz v United States, 389 US 347 [1967]; People v Lerhinan, 90 AD2d 74 [2d Dept 1982]).
However, New York courts have consistently held that there is no reasonable expectation of privacy in the common areas of a residential building, such as the lobby, common hallways and stairwells (People v Siler, 197 AD2d 842 [4th Dept 1993]; People v Coppin, 202 AD2d 279 [1st Dept 1994]; People v Johnson, 114 Misc 2d 578 [Sup Ct, NY County 1982], affd 126 AD2d 993 [1st Dept 1987]) absent an indication to the contrary (see, People v Lott, 102 AD2d 506 [4th Dept 1984] [locked front door for security reasons]).
In this case there is no evidence to support a finding that the front door was locked or that ingress was limited to tenants or authorized individuals via a doorman or some other means such as signs or other posted notices. Moreover, the hallways, stairwells and elevators were freely accessible to anyone upon entering the building. Therefore any individual at any time had complete access to the public areas of the building. Thus, the police officers were lawfully present within the building.
B. Lomack’s Consent
One of the exceptions to the warrant and probable cause requirements of a valid search is a voluntary consent by the defendant (People v Saglimbeni, 95 AD2d 141 [1st Dept 1983]). Voluntariness is determined by the free will and unequivocal acquiescence of the consenter (People v Gonzalez, 39 NY2d 122 [1976]; People v Driscoll, 87 AD2d 996 [4th Dept 1982]). Any acts of police coercion in obtaining consent will be deemed involuntary.
*713 Here there is no indication that Lomack was forced or coerced to consent. After meeting the officers in the hallway, Lomack learned that people in his apartment had refused the police entry. Lomack then volunteered to allow the police to enter, apparently to allay any suspicions the police might have had regarding those individuals. The subsequent discovery of contraband cannot as a matter of law render the consent involuntary. Nor can the mistaken beliefs of the consenter give rise to improper police conduct. The wisdom of granting consent is not analyzed in determining its validity. Only the voluntariness, based on all the circumstances of the case (People v Flores, 181 AD2d 570 [1st Dept 1992]) merit legal evaluation. This court therefore concludes that under the circumstances in this case Lomack’s consent was freely and voluntarily obtained.
C. Scope Of Consent
Once it is established that a valid consent has been obtained the scope of the search cannot exceed the consent. The scope is generally determined by what a reasonable person would believe the consent to include (People v Mitchell, 211 AD2d 553 [1st Dept 1995]; Florida v Jimeno, 500 US 248 [1991]).
In the present case Dragonetti requested of Lomack if he could "look around” and Lomack agreed. The question remains whether lifting a sandwich wax paper exceeded the scope of the consent. This court holds that it did not. Dragonetti’s request to search the apartment could not reasonably have been limited to a mere visual inspection. Dragonetti was already lawfully present within the apartment and thus was not required to seek permission to scan the premises. Had Dragonetti merely wished to view the area his request would have been entirely redundant. Therefore the consent to "look around” can only be construed as consent to conduct an actual search (see, People v Mitchell, supra).
Moreover, Dragonetti’s lifting the wax paper was indeed a valid exercise of police conduct in that it was a reasonable consequence of the consent that had just been granted. Permission to "look around” would as a matter of law include sifting and rummaging through papers on a table in such close proximity to the officers. Further, it would be unreasonable to conclude that the consent would not extend to such ordinary and common activity (cf., People v Jimenez, 163 Misc 2d 30 [Crim Ct, Bronx County 1994] [consent to look around does not reasonably include the attic and basement]).
Lastly, defendants’ contention that the search was unlawful in that the request for consent was not based on reasonable *714 suspicion is without merit. Reasonable suspicion is the necessary requirement for a lawful stop and accompanying frisk for weapons. Since this is an intrusion on the defendant’s person a minimal amount of suspicion is required before a stop can take place (Terry v Ohio, 392 US 1 [1968]; People v De Bour, 40 NY2d 210 [1976]).
However, there is no precedent for the proposition that the same reasonable suspicion standard is applicable when requesting consent. The safeguards that the reasonable suspicion standard affords individuals in stop and frisk scenarios is inapplicable in requests for consent situations since there is no intrusion on the individual. When an officer requests consent, the individual can simply refuse. In addition, the request for consent does not rise to the level of a stop since it is a mere police request which can be predicated on any articulable reason (People v Hollman, 79 NY2d 181 [1992]). Consequently, reasonable suspicion is not required before a request for consent is communicated.
The court does wish to comment on two Federal opinions that have dealt with the necessary prerequisite for requesting consent. Those decisions dealt with the narrow issue of whether an officer can request consent to search a car without any reasonable suspicion when the car had been validly stopped at a roadblock. The courts held in the affirmative and explained that the reasonable suspicion standard only applied to the initial stop and not to the consent which followed (United States v McCray, 692 F Supp 1019 [ED Ark 1988]; Garrett v Goodwin, 569 F Supp 106 [ED Ark 1982]). Therefore, those cases have no direct bearing on the issue presented in this case.
As the Supreme Court explained in Schneckloth v Bustamonte (412 US 218, 232 [1973]), "The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning.” There is, however, no requirement that the request for consent be precipitated by reasonable suspicion of criminal activity. Thus, the consent search was valid and the evidence was properly seized.
CONCLUSION
Defendants’ motion to suppress the drugs and drug vials is denied.