Martin Schoenfeld, J.
(dissenting in part). The relevant police testimony elicited at the suppression hearing is summarized as follows. On June 21, 2002, at approximately 11:00 p.m., four police officers assigned to an anti-crime unit were on patrol in an unmarked police car when they observed a Chevrolet-model car, with what appeared to be excessively tinted windows, idling next to a fire hydrant on Morris Avenue in the Bronx. Turret lights activated, all four officers exited the police car. Two of the officers approached the driver and lone occupant of the idling vehicle — defendant Jason Diaz — and requested pedigree information. Defendant “stalled” and “hemm[ed] and haw[ed]” in response, identifying himself variously as “Joseph Perez” and “Jose Manuel Perez Rivera” and haltingly providing the officers with two different dates of birth. A contemporaneous computer check yielded no “license under that information.”* Apparently at that point the police ordered defendant out of his car and conducted a search of the vehicle (supposedly on consent) that produced “nothing.” Eventually admitting that he did not have his driver’s license with him, defendant indicated that he had a “Puerto Rican license” at his Bronx apartment — a location at least two miles away — and asked the officers whether he could go home to get it. Despite the supervising police officer’s apt acknowledgment that police typically are “dealing with the unknown” in connection with citizen encounters involving automobiles, the police acceded to defendant’s request and allowed him to “drive off,” unaccompanied, with the four officers following him in the unmarked patrol car. When the two vehicles arrived in tandem at the appointed address approximately 10 minutes later, defendant “invited” the police to accompany him into his apartment. Again accepting the defendant’s offer, the police entered the apartment and in short order proceeded to recover several items of contraband situated in plain view, including “gun and ammo” magazines, 9 millimeter bullets, and a small amount of marihuana. Defendant, unable to produce the promised driver’s license, was arrested on various *16 charges, including driving without a license in violation of Vehicle and Traffic Law § 509. The police obtained a search warrant for the apartment and ultimately recovered additional rounds of ammunition, various types of drug paraphernalia, cocaine residue, and well over $100,000 in cash.
The Judicial Hearing Officer (JHO) who presided over the hearing credited the police testimony outlined above and recommended the denial of defendant’s suppression motion. Criminal Court rejected a number of the JHO’s factual findings and granted defendant’s suppression motion in toto, expressing substantial and, in my view, well-founded concerns about “the believability of the story of the officers with respect to their following the defendant to his home, after he gave them two false names and dates of birth and failed to produce a driver’s license, or with respect to any of the events subsequent thereto.” The People now appeal, and I would affirm.
On a motion to suppress evidence claimed to have been unlawfully obtained, the prosecution bears the burden of going forward to show the legality of the police conduct in the first instance (see People v Berrios, 28 NY2d 361, 367 [1971]; People v Malinsky, 15 NY2d 86, 91 n 2 [1965]). “Implicit in this concept is that the testimony offered by the People in first presenting their case must be credible” (People v Void, 170 AD2d 239, 241 [1991], quoting People v Quinones, 61 AD2d 765, 766 [1978]), and that neither the defendant nor the reviewing court need proffer an alternative version of events in circumstances where the prosecution evidence is inherently implausible. Although issues of credibility are ordinarily for the trier of fact — here the JHO — to determine (see People v Hierro, 5 Misc 3d 48, 49 [2004], lv denied 3 NY3d 757 [2004]), that rule must give way when the testimony under consideration is viewed as incredible as a matter of law (see People v Garafolo, 44 AD2d 86, 88 [1974]).
The People in this case urge the court to accept that the police eschewed what by all accounts would have been a valid on-the-scene arrest (see CPL 140.10 [1] [a]; see also People v Van Buren, 4 NY3d 640 [2005]), and elected to “exercise forbearance” in allowing an uncooperative and prevaricating suspect who was unable to produce proper identification to “drive off’ and lead the officers at nighttime to a supposed residence that the officers knew to be “far” away. The suppression record provides no plausible explanation, and none readily comes to mind, as to why police would be willing to afford such largesse to a potential arrestee in the context of this street encounter, *17 especially when the caravan procedure employed, hardly a textbook investigative approach, was so obviously fraught with uncertainty and danger. In this regard, one is hard pressed to believe that experienced police officers would risk the potential flight of a suspect whose identity and criminal background were then unknown but easily ascertainable, upon a speculative (and unarticulated) hunch that the suspect might somehow “lead them to evidence of more serious criminal activity” (majority op at 13), particularly in these circumstances where any attempt by the suspect to flee would necessarily raise the specter of a high-speed automobile chase through a residential neighborhood. The court is also asked to believe that the defendant voluntarily suggested that he be allowed to return home in order to retrieve a valid driver’s license which we now know did not exist and, further, that defendant consented to a police search of an apartment where various items of contraband and incriminating evidence were stored, many of them in plain view. I agree with the experienced and able suppression judge that the officers’ testimony strains credulity to the breaking point and has all of the indicia of a story tailored to overcome constitutional objections to what otherwise would be a clearly illegal apartment search (see People v Flores, 181 AD2d 570, 572 [1992]; People v Void, 170 AD2d 239 [1991], supra).
Inasmuch as the People failed to meet their “heavy burden” of establishing defendant’s consent to entry into the apartment (see People v Gonzalez, 39 NY2d 122, 128 [1976]), and since the unlawful entry led directly to the discovery of contraband and to defendant’s statements and provided no basis for obtaining a search warrant (see People v Perez, 266 AD2d 242 [1999], lv dismissed 94 NY2d 923 [2000]), Criminal Court properly granted defendant’s suppression motion in its entirety.
Suarez, EJ., concurs with McCooe, J.; Schoenfeld, J., dissents in part in a separate opinion.

 The police later learned that defendant’s New York driver’s license was suspended.